In the Matter of GARY NICHOLSON et al., Appellants-Respondents, v STATE COMMISSION ON JUDICIAL CONDUCT et al., Respondents-Appellants.

In the Matter of the STATE COMMISSION ON JUDICIAL CONDUCT, Respondent, v VINCENT CATALFO, Appellant.

In the Matter of the STATE COMMISSION ON JUDICIAL CONDUCT, Respondent, v CARMELA ALBINO, Appellant.

In the Matter of the STATE COMMISSION ON JUDICIAL CONDUCT, Respondent, v LORENZO DE LUCA, Appellant.

In the Matter of the STATE COMMISSION ON JUDICIAL CONDUCT, Respondent, v JOSEPH KRINSKY, Appellant.

In the Matter of the STATE COMMISSION ON JUDICIAL CONDUCT, Respondent, v SHIRLEY KRINSKY, Appellant.

First Department, December 18, 1979

## APPEARANCES OF COUNSEL

*Maurice N. Nessen* of counsel *(Susan C. Ervin* with him on the briefs; *Kramer, Lowenstein, Nessen, Kamin & Soll,* attorneys), for appellants-respondents.

*Gerald Stern,* attorney *(Raymond S. Hack* and *Seth Halpern* with him on the briefs), for respondents-appellants.

## OPINION OF THE COURT

LUPIANO, J.

Special Term had before it a petition brought under CPLR article 78 by Nicholson and Surrogate LAMBERT against the State Commission on Judicial Conduct ("the Commission") and its administrator, and related motions by certain campaign workers to: (i) consolidate the article 78 proceeding with five proceedings brought by the Commission to compel testimony

by the five campaign workers; (ii) quash or vacate a subpoena *ad testificandum* and a subpoena duces tecum served upon Nicholson by the Commission; (iii) void a "request" by the Commission for the Surrogate's appearance and production of documents; (iv) require the production by the Commission of certain listed documents; (v) seal the record; and (vi) dismiss the five proceedings brought by the Commission to compel further testimony by the campaign workers. Special Term granted the motions to consolidate and to seal the record, but denied all other relief except it granted an injunction against all proceedings by the Commission under Item two of its amended administrator's complaint.

Nicholson, the Surrogate and the five campaign workers appeal from those parts of the judgment which denied their requests for relief while the Commission cross-appeals from the judgment insofar as it directs sealing of the record and prohibits the Commission from proceeding with an inquiry on Item two of the amended administrator's complaint.

Prior to the aforesaid application and motion and the determination thereon which is the subject of this appeal, petitioner Nicholson initially appealed from an order and judgment (one paper), entered August 16, 1978, denying his motion to quash or vacate a subpoena duces tecum served upon him by respondent State Commission on Judicial Conduct. Upon appeal, we determined that paragraph "e" of the subpoena was proper and that the Commission may proceed. In so doing, we rejected petitioner Nicholson's claim that his First Amendment rights were being violated in this respect. Paragraph "e" of the subpoena sought production of "any and all records or writings pertaining to or relating to a fund-raiser held on December 4, 1977 kept by the Trial Lawyers Committee of Marie Lambert, Surrogate, Committee for a People's Surrogate, Friends of Marie Lambert, and any other committee formed to aid the nomination or election of Marie Lambert as Surrogate." We respectfully noted that the Commission made "a sufficient showing * * * that its inquiry in this respect was initiated by a written complaint, a prerequisite to jurisdiction by the commission (Judiciary Law, art 2-A, § 44), that the commission is authorized to demand these records and that there is a legitimate governmental interest in this demand [citations]" *(Matter of Nicholson v State Comm. on Judicial Conduct,* 67 AD2d 649, 650).

Regarding Items "b", "c" and "d" of the subpoenas which

were relevant to the 1977 campaign of Marie Lambert for New York Surrogate, we held the appeal in abeyance, as the record did not clarify whether a jurisdictional basis existed for the demand for such items ("b", "c" and "d"). Accordingly, we remanded the matter to Special Term for an *in camera* ex parte opportunity to the Commission to demonstrate an existent complaint and that the items demanded are relevant to a legitimate investigation *(Matter of Nicholson v State Comm. on Judicial Conduct, supra)*.

Subsequent to the *in camera* ex parte hearing at Special Term, we upheld the finding by Special Term that there was no written complaint concerning the entire 1977 fund-raising campaign other than that pertaining to the December 4, 1977 fund-raising affair. Thus, no jurisdictional basis for the demand for the records sought by "b", "c" and "d" above was presented and we, accordingly, modified the order and judgment (one paper), entered August 16, 1978, to the extent of granting the petition by vacating said items "without prejudice to the service of a new subpoena seeking the information requested under Items "b", "c" and "d" predicated upon the receipt or filing of a proper complaint under section 44 of the Judiciary Law *(Matter of Nicholson v State Comm. on Judicial Conduct,* 68 AD2d 851). This disposition followed from our observation "that if other information received by the commission, in addition to the written complaints referred to above [i.e., those relating to the December 4, 1977 fund-raiser] encompassed the *entire* 1977 campaign, the commission could avail itself of the option provided by subdivision 2 of section 44 of the Judiciary Law, to initiate on its own motion an investigation by filing 'as part of its record a written complaint, signed by the administrator of the commission, which complaint shall serve as a basis for such investigation'" *(Matter of Nicholson v State Comm. on Judicial Conduct, supra,* at p 852; emphasis supplied).

While the appeal was *sub judice* and on February 5, 1979, an article appeared in the *Village Voice* which asserted that Surrogate LAMBERT was involved in personally supervising and deciding financial matters relevant to her 1977 election campaign. Concomitantly with our final determination in the prior appeal, the Commission, in compliance with the Judiciary Law, authorized the filing of an administrator's complaint and such complaint was signed and filed (Judiciary Law, § 44, subd 2). On April 18, 1979, the Commission filed

an amended administrator's complaint containing the following three areas of allegations: Item (1) that the Surrogate, in connection with her 1977 campaign, engaged in and attended fund-raising activities, acquainted herself with the identities of her contributors and otherwise improperly participated in that campaign; Item (2) that during and after the campaign, cash contributions in excess of $100 were accepted and expenses and contributions were not properly reported; Item (3) that after assuming office, Surrogate LAMBERT exercised power of appointment on the basis of favoritism and not solely on merit and that she appointed campaign contributors and others based on political considerations.

Petitioners Nicholson and Surrogate LAMBERT move to prohibit the Commission from proceeding with the investigation by seeking to vacate the amended administrator's complaint. After an ex parte *in camera* hearing, at which the Commission's administrator testified and questions formulated by petitioners' counsel were asked, Special Term conditionally granted the petitioner's motion only with respect to Item 2 above "unless and until" the Commission amends that item to claim that the conduct therein alleged was by or at the direction of Surrogate LAMBERT. Items 1 and 3 above were found to be proper areas of investigation by the Commission and the record was directed by Special Term to be sealed.

It should be noted that the Commission is a disciplinary body which proceeds on the basis of a confidential investigation predicated on a complaint as the vehicle for determining whether a Judge should be the subject of a disciplinary proceeding. The purpose of the investigation is to determine whether or not charges in the form of a "formal written complaint" should be brought. We are thus not confronted with the issue of determining the viability of formal charges embraced within a formal complaint, but with the viability of the initial investigatory process which may or may not result in the presentation of formal charges. In light of our prior two determinations and of the present record, we perceive no impediment to the Commission's progressing with the investigatory phase of this proceeding. The Commission has sufficiently demonstrated the authority, relevancy and basis for its investigatory action (cf. *Matter of A'Hearn v Committee on Unlawful Practice of Law of N. Y. County Lawyers' Assn.*, 23 NY2d 916, 918). Patently, there is no jurisdictional infirmity

attached to the Commission's proceeding with an investigation into the three items hereinabove set forth.

Relevant to Item (2) above, Special Term erred in conditioning the Commission's investigation into that item upon its being amended to read that the conduct embraced therein was by or at the direction of the Surrogate. The error lies in confusing the concept of a complaint as a basis for investigation with the concept of a formal written complaint as a basis for a disciplinary proceeding. In its investigatory phase, assuming no jurisdictional impediment and that the matter is fairly relevant, the Commission is entitled to seek to determine to what extent, if at all, the Surrogate is responsible for the improprieties asserted in Item 2. No abstract demarcation exists between Surrogate LAMBERT's activities before and after taking the oath of office and donning the judicial robe. Items 1 and 3 properly found to be subject of the Commission's investigatory powers embrace times ante as well as postinduction of Ms. Lambert. To hold that the Commission must allege that the Surrogate is personally and directly responsible for the activity complained of as a predicate for investigating that activity would vitiate the authority of the Commission to carry out its mandated duties. As aptly noted by Mr. Justice STEWART in his concurring opinion in *Landmark Communications v Virginia* (435 US 829, 848): "There could hardly be a higher governmental interest than a State's interest in the quality of its judiciary." To hold that *both* the "written complaint" envisioned in subdivisions 1 and 2 of section 44 of the Judiciary Law and the "formal written complaint" envisioned in subdivision 4 of section 44 of the Judiciary Law are subject to the same standards would destroy the flexibility required for an effective investigative screening process. Indeed, such an interpretation might ultimately result in barring the public from making complaints that could be acted upon.

Thus, both precedent (including the prior determinations of this court in this matter) and a reasoned construction of the Judiciary Law compel the conclusion that an investigation commenced by the State Commission on Judicial Conduct, if initiated by a written complaint and based upon an adequate factual foundation which establishes that the area of inquiry falls within the Commission's jurisdiction, should be allowed to proceed. Further, conditioning the investigation on the basis of alleging that the improprieties were committed "by or

at the direction of" the Surrogate is an arbitrary restriction upon the Commission's area of action. For example, the investigatory process might disclose that the improprieties were not committed by or at the direction of the Surrogate, but were committed with her knowledge or acquiescence. The danger of the condition imposed by Special Term lies in the fact that by thus limiting the Commission, the court simultaneously defines the conduct the Commission may discipline.

Reason and common sense dictate that on this record the Commission should be allowed to proceed to fulfill the mandate imposed by the Constitution of the State of New York to "receive, initiate, investigate and hear complaints" with respect to judicial conduct (NY Const, art VI, § 22, subd a). The Commission asks for nothing more and the Constitution requires nothing less.

▪ Regarding the aspect of sealing the record, Special Term's determination was patently proper. Subdivision 3 of section 44 of the Judiciary Law provides, in pertinent part: "A transcript shall be made and kept with respect to all proceedings at which testimony or statements under oath of any party or witness shall be taken * * * Such transcript *shall be confidential* except as otherwise permitted by section forty-five of this article" (emphasis supplied). Section 45 of the Judiciary Law states, in relevant part: "Except as hereinafter provided, all complaints, correspondence, commission proceedings and transcripts thereof, other papers and data and records of the commission shall be confidential and shall not be made available to any person except pursuant to section forty-four of this article." Clearly, where the Commission's investigation is still in a preformal complaint stage, the confidentiality mandate of the statute warrants sealing of the record. The assertion that a Judge who challenges the Commission forfeits his or her statutory right to confidentiality is totally without merit and would frustrate the clear legislative intent to maintain confidentiality in the initial stages of the inquiry. In effect, such assertion, if adopted, would create an intolerable and unreasonable choice between passive submission to possibly improper proceedings and irreparable damage to reputation. Indeed, section 45 of the Judiciary Law makes it abundantly clear that in the initial stages of the investigative process set in motion by the filing of a complaint, it is only at the behest of the Judge who is the subject of the complaint that public disclosure may be made.

Further, the statute explicitly provides for public disclosure at a specific point in the process, to wit, after a hearing pursuant to service of a formal written complaint results in a written determination by the Commission that a Judge be admonished, censured, removed or retired and such written determination has been transferred to the Chief Judge of the Court of Appeals and a copy thereof served on the Judge involved (Judiciary Law, § 44, subd 7). It ill behooves the Commission to seek to subvert the confidentiality aspect of the statutory madate by averring a violation on Special Term's part of policy governing public access to the courts, while at the same time utilizing the same statutory requirement of confidentiality to justify refusal to disclose material in its possession. The rationale underlying the propriety of the *in camera* consideration of the Commission's motion to compel further testimony applies with equal force herein. Both obtain force from the same statutory mandate.

██ Accordingly, the judgment of the Supreme Court, New York County (EVANS, M., J.), entered July 10, 1979, which directed that the record of the proceedings be sealed, consolidated the Commission's applications with the article 78 proceeding brought by Nicholson and Surrogate LAMBERT, granted the Commission's applications to compel Joseph Krinsky, Shirely Krinsky, Vincent Catalfo, Carmela Albino and Lorenzo De Luca to comply with the subpoenas served upon each of them, denied Nicholson's motion to quash the subpoenas served upon him, granted in part the article 78 proceeding by enjoining the Commission from investigating the conduct of Surrogate LAMBERT with respect to Item 2 of the amended administrator's complaint, and dismissed the article 78 proceeding in all other respects, should be modified, on the law, to the extent of vacating so much thereof as enjoined the Commission from investigating the conduct of Surrogate LAMBERT with respect to Item 2, thereby denying the article 78 application and dismissing the article 78 petition in all respects, and as so modified, the judgment should be affirmed, without costs and disbursements.

KUPFERMAN, J. P. (dissenting in part). While it may be argued that the *in camera* ex parte proceeding at which Special Term fleshed out the contentions of the Commission, and from which the Surrogate was barred, was a violation of due process *(Matter of Taylor,* 567 F2d 1183, 1187), my partial dissent is not merely on that ground.

The Commission on Judicial Conduct is not involved in the general conduct of elections as is the State Board of Elections (Election Law, § 3-104). To a large extent, the matters sought to be inquired into in items 1 and 2 (set forth in the majority opinion, p 52) are election campaign matters.

Assuming a proper basis for the Commission's involvement and complaint, it would be possible to proceed as to item 3 by checking the filed statement of campaign contributors and also the appointments by the Surrogate, which are matters of public record (Election Law, §§ 14-102, 14-104; Judiciary Law, § 35-a, subd 3), rather than first going on a fishing expedition.

The identity of campaign contributors cannot be kept secret. The Commission itself recognizes this: "It may be unrealistic to expect any political candidate not to know who his large contributors are, despite ethical codes and commentaries that suggest that the identities of contributors should be withheld from the judge. On the contrary, in New York, the Election Law (Section 14-102) virtually defeats this intent by requiring a public filing of contributors." (Ann Report of NYS Comm on Judicial Conduct, March, 1979, pp 56-57; n omitted.)

Moreover, it must be recognized that, personalities and issues aside, this candidate for Surrogate was running in opposition to the established political organization.

The Committee for Modern Courts, Hon. ROBERT MACCRATE, chairman, has stated that judicial election has "become largely a charade". (NYLJ, Dec. 5, 1979, p 1, col 2.) "[T]he judicial candidates which come before the voters are really 'fronts' for what happens behind the scenes in politics." (*Ibid.,* at p 3, col 1.) "The * * * system is neither democratic nor is it capable of placing the best qualified people in our state courts." (*N. Y. Times,* Dec. 5, 1979, p B4, col 3, quoting ROBERT MACCRATE.)

The election campaigns for the Court of Appeals in 1973 and 1974 led to an amendment to the New York State Constitution providing for merit selection of the Judges of the Court of Appeals by a Judicial Nominating Commission (art VI, § 2; Judiciary Law, art 3 A). (See Frederick Miller, Merit Selection of Judges: New York on the Threshold, NYS Bar Journal, Jan., 1979, vol 51, No. 1, p 8.)

Given the problems inherent in a campaign, be it election or primary, an outsider cannot battle the system without being in the forefront.

The problem is clearly stated in an article by Professor Jon R. Waltz of Northwestern University Law School in the October, 1979 issue of Judicature (vol 63, No. 4, p 185, pp 186-187) entitled "Some firsthand observations on the election of judges":

"One is impressed, early on, if one did not previously realize it, that in a community sufficiently populous to foreclose direct dialog with voters, there is no way for a judicial candidate to communicate relevantly with the electorate. This circumstance alone renders fraudulent the suggestion that judges are popularly elected; substitute 'blindly' for 'popularly.' The candidate of a dominant political organization can rely on thousands of city hall payrollers to carry his or her message, which is simply, 'Elect me, I am the annointed one.' The underfinanced challenger is precluded from waging a costly media campaign to counter this. * * *

"In short, whether or not the judicial candidate has any way to project his or her qualifications, some of the most important ones are political poison and dare not in any event be mentioned. I would not have garnered 10 per cent of the vote had I gone about mentioning, even in the most self-effacing fashion, that I am a high-standing Yale Law School graduate, a law review editor, a former member of a large and distinguished law firm, and the author of award-winning books in the legal field. Those were my political albatrosses. * * *

"Aside from the qualifications of individual candidates, there are ordinarily almost no issues in a judicial campaign upon which one can take a stand, and fewer still that strike any real sparks. One cannot manufacture issues and then promise dramatic judicial solutions to them. The candidate is cast back on bland statements about independence and efficiency, about 'justice and decency.' The result even public-spirited citizens are not interested in judicial races and frequently do not bother to vote the judicial ballots."

How, then, could an effective campaign, with the highest motives, be waged for judicial office unless the candidate "engaged in and attended fund-raising activites [and] acquainted herself with the identities of her contributors"?

I would adhere to the previous rulings of this court in *Matter of Nicholson* (67 AD2d 649).

SANDLER, SULLIVAN and LANE, JJ., concur with LUPIANO, J.; KUPFERMAN, J. P., dissents in part in an opinion.

Judgment, Supreme Court, New York County, entered on July 10, 1979, modified on the law, to the extent of vacating so much thereof as enjoined the Commission from investigating the conduct of Surrogate LAMBERT with respect to Item 2, thereby denying the article 78 application and dismissing the article 78 petition in all respects, and as so modified, the judgment is affirmed, without costs and without disbursements.