OPINION OF THE COURT

Per Curiam.

This appeal involves a challenge under the Federal Constitution and State law to the authority of the New York State Commission on Judicial Conduct to investigate alleged improprieties by Marie Lambert in the conduct of her 1977 campaign for election as Surrogate of New York County.
The litigation has a tortured history, originating in oral and written complaints received by the commission concerning the solicitation of members of the Bar for attendance at a fund-raising event held on December 4, 1977 by Surrogate Lambert’s supporters. The commission determined to investigate and, in June, 1978, subpoenaed Gary Nicholson, Surrogate *604 Lambert’s former campaign manager. Nicholson moved to quash the command to appear and produce documents concerning the 1977 campaign, urging First Amendment and State law grounds. On appeal from the denial of that motion, the Appellate Division sustained the subpoena insofar as it sought testimony and records concerning the December 4, 1977 fund raiser, finding that the inquiry was properly initiated by a written complaint about lawyer solicitations received by the commission as required by subdivision 1 of section 44 of the Judiciary Law. As to the remaining requests, the court held the appeal in abeyance and remitted to Special Term for an ex parte, in camera hearing to determine whether they were relevant to the investigation on an existent complaint (67 AD2d 649). Final decision by the Appellate Division was rendered following the hearing: the original complaint, while justifying the investigation into the December 4 event, did not authorize an inquiry into the entire campaign. The decision was without prejudice to a wider investigation if supported by a proper written complaint (Judiciary Law, § 44, subd 1) or the filing of an administrator’s complaint (Judiciary Law, § 44, subd 2) based on information concerning the entire campaign and not simply the complaints about the December 4 fund raiser (68 AD2d 851).
During the pendency of the Nicholson appeal, the commission received information concerning alleged campaign improprieties by Surrogate Lambert and her supporters, as well as alleged judicial misconduct following election. In March, 1979, an administrator’s complaint was filed, averring possible improper activities beyond the December 4 fund raiser. During the course of the commission investigation, subpoenas were issued to five former campaign workers: Joseph Krinsky, Shirley Krinsky, Vincent Catalfo, Carmelo Albino and Lorenzo De Luca, appellants here. They refused to answer questions unrelated to the December 4 fund raiser. Prior to and after the filing of the administrator’s complaint, the commission requested Surrogate Lambert’s appearance to answer questions. She was unable to appear.
In April, the commission filed an amended administrator’s complaint, alleging that (1) in connection with her 1977 campaign, Surrogate Lambert engaged in and attended fund-raising activities, acquainted herself with the identities of her contributors and otherwise improperly participated in the campaign; (2) during and after the campaign, cash contribu *605 tions in excess of $100 were accepted, and expenses and contributions were not properly reported; and (3) after assuming office, Surrogate Lambert exercised her power of appointment on the basis of favoritism and not solely on the basis of merit, appointing contributors and others based on political considerations. The commission resubpoenaed Nicholson and also moved to compel the five campaign workers to comply with the subpoenas served by answering all questions relating to the allegations in the administrator’s complaint.
Nicholson and Lambert thereafter, by order to show cause, commenced an article 78 proceeding to enjoin further proceedings by vacating the administrator’s complaint. Motions were brought on seeking, among other relief, to consolidate the article 78 proceeding with the proceedings to compel compliance by the five campaign workers, to quash the subpoenas issued to Nicholson, to void the request for Surrogate Lambert’s appearance, and to seal the record. Following an ex parte hearing to determine the basis for the expanded investigation, Special Term granted the motions to consolidate and seal the record and denied further relief except to the extent of enjoining commission proceedings under item 2 of the complaint on the ground that there was no allegation of misconduct by a Judge.
On appeal, the Appellate Division modified, over a partial dissent, to the extent of vacating the injunction against investigating conduct with respect to item 2, thereby dismissing the article 78 petition in all respects. That court found from the record and the prior determinations no impediment to permitting the continuation of the investigatory stage of the proceedings, as the commission’s authority, the basis of the investigation and the relevancy of the requested disclosure were sufficiently demonstrated (72 AD2d 48). Nicholson, Surrogate Lambert and the five campaign workers now appeal the determination adverse as to them and the commission cross-appeals from the sealing of the record. For reasons that follow, and to the extent indicated, we modify.
As a preliminary matter, it must be determined whether an article 78 petition seeking relief in the nature of prohibition lies in these circumstances. Invocation of the extraordinary remedy of prohibition is appropriate "only when there is a clear legal right” (Matter of Dondi v Jones, 40 NY2d 8, 13) and only when the body or officer "acts or threatens to act without jurisdiction in a matter over which it has no power *606 over the subject matter or where it exceeds its authorized powers in a proceeding over which it has jurisdiction” (Matter of State of New York v King, 36 NY2d 59, 62). The remedy is available to prevent only judicial or quasi-judicial action (Matter of Dondi v Jones, supra, at p 13; Matter of B. T. Prods. v Barr, 44 NY2d 226); it may not be sought to control merely legislative, executive or administrative acts (see People ex rel. Bender v Milliken, 185 NY 35; Matter of Kaney v New York State Civ. Serv. Comm., 190 Misc 944, affd 273 App Div 1054, affd 298 NY 707; Note, Writ of Prohibition in New York— Attempt to Circumscribe an Elusive Concept, 50 St John’s L Rev 76, 84). Even when the petition presents a "substantial claim” of an absence of jurisdiction or an act in excess of jurisdiction, prohibition still may be deemed inappropriate after consideration of such factors as the "gravity of the harm which would be caused by an excess of power” or "whether the excess of power can be adequately corrected on appeal or by other ordinary proceedings at law or in equity” (La Rocca v Lane, 37 NY2d 575, 579; Matter of Wilcox v Dwyer, 48 NY2d 1003; see Note, 50 St John’s L Rev, at pp 97-98).
It must be emphasized that prohibition is not available to correct mere errors of law, procedural or substantive, in litigation (see Matter of State of New York v King, 36 NY2d 59, 62, supra). It is, rather, the means to prevent an arrogation of power in violation of a person’s rights, particularly constitutional rights (see Matter of Lee v County Ct. of Erie County, 27 NY2d 432, 437-438). Thus, the presentation of an arguable and substantial claim of such an excess of power generally results in the availability of a proceeding in the nature of prohibition (see La Rocca v Lane, supra, at p 581). It is immaterial to this basic determination whether the claim is determined adversely to the petitioner on the merits. That relief ultimately might be denied does not preclude the proceeding.
It cannot be disputed that the commission is vested with authority to investigate improprieties by members of the judiciary (see NY Const, art VI, § 22). The claim here, however, is that the investigation into allegedly improper campaign activities has a chilling effect on the exercise of First Amendment rights. The claim seeks to vindicate rights of political expression and association long cherished in our constitutional scheme (see Buckley v Valeo, 424 US 1, 25). If indeed the investigation impermissibly chills the exercise of *607 these rights, the commission would be acting in excess of power and prohibition would be the appropriate remedy. That the issues could be raised on appeal from any disciplinary action taken is not a persuasive reason in this instance for denying the availability of the remedy. Thus, we may entertain the instant proceeding seeking prohibition.
We turn then to the merits of the application challenging on First Amendment grounds the commission’s authority to investigate the conduct of the 1977 campaign. It is urged that the investigation, the allegations supporting it and the rules of conduct upon which those allegations purportedly are based represent unconstitutional interferences with protected rights of political expression and association. The apparent basis for this contention is that the investigation, seeking disclosure of the details of campaign activities, itself impinges upon associational freedoms; that a judicial candidate has the unfettered "right” to solicit funds directly or participate in the solicitation; and that the prohibition against political appointments inhibits persons who might be in a position to receive such favored treatment from exercising their right to express support for the candidate. These arguments are unpersuasive.
Of course, the rights of political expression and association are at the heart of the First Amendment (see Buckley v Valeo, supra, at p 25). But not every interference with these rights, not every regulation of a political campaign, violates the constitutional command (see CSC v Letter Carriers, 413 US 548, 567). Even significant restrictions on protected First Amendment rights "may be sustained if the State demonstrates a sufficiently important interest and employs means closely drawn to avoid unnecessary abridgment of associational freedoms” (Buckley v Valeo, supra, at p 25). A proper analysis calls for examination of the degree of interference with the First Amendment interests, the strength of the governmental interest justifying the restriction and the means chosen to prevent the asserted evil (see Morial v Judiciary Comm. of State of La., 565 F2d 295, cert den 435 US 1013).
There can be no doubt that the State has an overriding interest in the integrity and impartiality of the judiciary. There is "hardly * * * a higher governmental interest than a State’s interest in the quality of its judiciary” (Landmark Communications v Virginia, 435 US 829, 848 [Stewart, J., concurring]; see, also, Morial v Judiciary Comm. of State of *608 La., supra; cf. Trafelet v Thompson, 594 F2d 623, cert den 444 US 906). Charged with administering the law, Judges may not actually or appear to make the dispensation of justice turn on political concerns (cf. CSC v Letter Carriers, 413 US 548, supra). The State’s interest is not limited solely to preventing actual corruption through contributor-candidate arrangements. Of equal import is the prevention of the "appearance of corruption stemming from public awareness of the opportunities for abuse” (Buckley v Valeo, supra, at p 27; CSC v Letter Carriers, supra).
It is in light of these overriding interests that the investigatory activities of the body charged with policing the conduct of Judges must be examined. To further the State’s interest, the commission, when aware of acts which may constitute misconduct, must be free to conduct an investigation to determine whether formal charges are warranted. That such an investigation may touch upon political and associational rights is not sufficient to abort the investigation in its nascent stage. Misconduct by a Judge or judicial candidate cannot be shielded from scrutiny merely because it takes place in the political forum. The First Amendment implications, if any there be, are far outweighed by the State’s interest in the integrity of its judiciary.
Nor does the compelled disclosure sought by the commission impermissibly impinge upon the free exercise of associational rights protected by the First Amendment. It is undisputed that "significant encroachments on First Amendment rights of the sort that compelled disclosure imposes cannot be justified by a mere showing of some legitimate governmental interest * * * [T]he subordinating interests of the State must survive exacting scrutiny * * * [TJhere [must] be a 'relevant correlation’ or 'substantial relation’ between the governmental interest and the information required to be disclosed” (Buckley v Valeo, 424 US 1, 64, supra, quoting, Bates v Little Rock, 361 US 516, 525, and Gibson v Florida Legislative Comm., 372 US 539, 546 [footnotes omitted]). Under this test, the disclosure sought here passes constitutional scrutiny.
Comprehensive disclosure requirements for political contributions and expenditures similar to New York’s (see, e.g., Election Law, § 14-102) withstood constitutional attack in Buckley. Such requirements were there justified by the governmental interests in providing the electorate with information about the source of funds and manner of expenditures, in *609 deterring actual corruption and its appearance, and in detecting violations of permissible restrictions on the conduct of the campaign (Buckley v Valeo, supra, at pp 66-68). Most of the information sought by the subpoenas is no more than is statutorily required and thus, disclosure may not be avoided.
Those demands that go beyond the statutory requirements also must be obeyed. The State’s substantial concern for the subject of the investigation outweighs the claimed burdens on associational freedom asserted here. In furtherance of the interest in ferreting out corrupt practices, the commission may legitimately request information about solicitations for contributions and attendance at fund raisers. There is more than adequate support in the record to establish the requisite relationship between the disclosure sought and the issues to be clarified. It is not enough to avoid compelled disclosure of information relevant to the legitimate subject of inquiry merely to assert its potentially chilling effect (see Buckley v Valeo, supra, at pp 71-72). While public disclosure in the abstract might deter participation by some, or subject supporters to harassment or coercion, there must be some concrete demonstration at least of "a reasonable probability” (id., at p 74) of injury occasioned by disclosure (see Buckley v Valeo, supra; N. A. A. C. P. v Alabama, 357 US 449). No such showing has been made here.
In further support of the claim that the commission in this investigation is acting in excess of power, appellants assert that the substantive allegations in the complaint, which may form the basis for formal commission action, work an unconstitutional interference with First Amendment rights. Arguing that the First Amendment is violated by the proscriptions against direct fund solicitations by a judicial candidate and appointments based on political considerations, appellants conclude that there is no lawful basis for the commission’s inquiry. We view appellants’ challenge as an indirect attack upon a determination that certain activities may constitute judicial misconduct and conclude that the arguments are insufficient to warrant restraining the commission’s activities and indeed are premature.
Whatever the source of the commission’s determination to investigate, we can discern nothing in the investigation, the official action here challenged, which impermissibly burdens the exercise of those rights. If at all, it is the proscription itself or a sanction imposed for its violation that impairs the *610 asserted rights. But we have here a challenge merely to an investigation into conduct that may warrant the filing of formal charges of misconduct. No formal charges have yet been filed. Whether and in what circumstances charges of improper fund-raising activities or judicial favoritism ultimately can be sustained against a First Amendment challenge need not now be decided. The mere filing of an administrator’s complaint, alleging improprieties in the conduct of an election campaign and its aftermath, simply has too remote an impact on protected rights of political expression to support the instant claim.
In sum, we conclude that the First Amendment does not preclude this investigation. While we would not hesitate to restrain official action that threatens to chill the exercise of First Amendment rights, no such result attends the investigation. Accordingly, the article 78 petition seeking prohibition was properly dismissed.
 We turn then to the issues involved in the motions to quash and to compel compliance with the commission subpoenas. Appellants urge a litany of grounds to invalidate the instant investigation. However, a motion to quash or to compel compliance raises only the issues of the authority of the investigating body and whether the inquiry falls within the scope of that authority (see Matter of Sussman v New York State Organized Crime Task Force, 39 NY2d 227; Matter of Santangello v People, 38 NY2d 536; Matter of La Belle Creole Int., S. A. v Attorney-General of State of N. Y., 10 NY2d 192; Carlisle v Bennett, 268 NY 212). Under this standard, the subpoenas must be obeyed. The Commission on Judicial Conduct is authorized by the New York State Constitution to "receive, initiate, investigate and hear complaints with respect to the conduct, qualifications, fitness to perform or performance of official duties of any judge or justice of the unified court system” (NY Const, art VI, § 22, subd a). The commission "may determine that a judge or justice be admonished, censured or removed from office for cause, including, but not limited to, misconduct in office * * * and conduct, on or off the bench, prejudicial to the administration of justice” (id.). The Judiciary Law implements the constitutional authorization and establishes the commission, granting it broad investigatory and enforcement powers (see Judiciary Law, §§ 41, 42, 44). Specifically, the commission must investigate following receipt of a complaint, unless that complaint is determined to *611 be facially inadequate (Judiciary Law, § 44, subd 1), and may on its own motion initiate an investigation upon the filing of a written complaint signed by the administrator of the commission (Judiciary Law, § 44, subd 2).
It is thus evident that the statute and Constitution give the commission broad power to inquire into the conduct of a Judge. Quite simply, so long as the commission, in good faith, is investigating the conduct of a Judge, the commission is acting within the scope of its authority and a subpoena issued pursuant thereto is not subject to challenge. A witness called before the commission may not go beyond this inquiry to avoid compliance by attacking the specific allegations upon which the investigation is based.
Thus, we need not decide whether direct fund solicitation involves judicial impropriety or the appearance of impropriety or whether appointments based on political considerations rather than merit may sustain a charge of misconduct. Any constitutional and State law implications of these issues may be the subject of judicial scrutiny if and when a disciplinary sanction is imposed following a proceeding brought on formal charges. The instant proceeding is simply an improper vehicle for review of these issues.
Appellants further contend that the commission has failed to demonstrate the evidentiary predicate for the allegations in the complaint and thus, the subpoenas must fail. We disagree. To sustain the subpoenas, the commission need only make a preliminary showing that the information sought is reasonably related to a proper subject of inquiry (see Matter of Sussman v New York State Organized Crime Task Force, 39 NY2d 227, 231, supra; Matter of La Belle Creole, Int., S. A. v Attorney-General of State of N. Y., 10 NY2d 192, supra). That has been amply demonstrated.* It is of no concern to a *612 mere witness whether the commission is in possession of sufficient information to warrant the institution of formal proceedings. We emphasize that the amended administrator’s complaint here in issue represents only the initiation of a commission investigation of judicial impropriety. To require the commission to come forward with facts that would support a charge would be to restrict unnecessarily the commission’s power to inquire into judicial misconduct. Indeed, such a requirement would render the commission ineffective as the instrument through which the integrity of the judiciary is assured. We decline to authorize such a result.
Finally, we reach the issue raised by the cross appeal— the propriety of sealing the record in this proceeding. Section 45 of the Judiciary Law provides that with certain exceptions, "all complaints, correspondence, commission proceedings and transcripts thereof, other papers and data and records of the commission shall be confidential and shall not be made available to any person except pursuant to section forty-four.” The Judge who is the subject of the complaint may request in writing that "copies of the complaint, the transcripts of hearings by the commission thereon, if any, and the dispositive action of the commission with respect to the complaint * * * shall be made available for inspection and copying to the public, or to any person, agency or body designated by such judge” (Judiciary Law, § 45). Section 44 requires confidentiality of the transcript made with respect to all proceedings at which testimony or statements under oath are taken, except as permitted by section 45 (Judiciary Law, § 44, subd 3). It is only after the commission has completed its action and the record has been transmitted to the Court of Appeals that "the determination of the commission, its findings and conclusions and the record of its proceedings shall be made public and shall be made available for public inspection” (Judiciary Law, § 44, subd 7).
The Appellate Division ruled that the scheme of confidentiality for commission proceedings required sealing of the court records. We disagree in this respect. True, the Legislature established strict rules of confidentiality to prevent premature disclosure. But the scheme applies only to matters *613 before the commission and nothing in the statute can be read as applying to matters brought before the court.
The public policy of this State is to ensure awareness of judicial proceedings (see Judiciary Law, § 4; Matter of Westchester Rockland Newspapers v Leggett, 48 NY2d 430). While in an appropriate case a court may draw on its power to seal its own records (cf. Matter of Dorothy D., 49 NY2d 212; Matter of Todd H., 49 NY2d 1022), a blanket rule requiring the sealing of all court records involving proceedings by the commission is unjustified in the absence of legislative mandate. The Appellate Division erroneously substituted its judgment for that of the Legislature in perceiving the need for sealing. Its rule is no less than the judicial creation of a category of court proceedings that is to be shielded from public scrutiny. Public access to court records need not and should not signal access to the commission’s internal proceedings. Indeed, such precautions as in camera hearings, utilized in this case, preserve confidentiality. If the Legislature deems it necessary to extend the proscription against disclosure to judicial proceedings connected with those of the commission, it may do so (cf. CPL 190.50, subd 7). However, a rule requiring such extraordinary relief should not come from this court.
Accordingly, the order of the Appellate Division should be modified to the extent of reversing so much thereof as ordered the sealing of court records, with costs to the New York State Commission on Judicial Conduct, and, as so modified, affirmed.

 Contrary to appellants’ assertion, Special Term was not required to conduct an adversary hearing in camera to determine the factual and legal predicate for the investigation. Subdivision 3 of section 44 and section 45 of the Judiciary Law provide for the confidentiality of preliminary commission proceedings. Such restrictions serve the dual purpose of protecting the confidentiality of complainants and witnesses, thus, ensuring the more effective functioning of the commission, and of protecting the Judge under investigation from injury to reputation resulting from the exposure of unjustified complaints (see Landmark Communications v Virginia, 435 US 829, 835, supra). While a Judge is given the power to waive confidentiality following dispositive action of the commission on the complaint (see Judiciary Law, § 45), that power is not unlimited at the preliminary stages of an investigation. At that point, the commission’s interest in encouraging the filing of complaints and in witness participation is *612 entitled to protection against premature disclosure. The ex parte hearing here to determine the commission’s investigatory power and the basis for and relevancy of the requests was proper (cf. Matter of Hynes v Lemer, 44 NY2d 329).