Simons, J.
(dissenting). I would deny petitioners’ motions to quash and grant respondents’ cross motions to compel compliance with the subpoenas in these proceedings.
A motion to quash or compel compliance with an office subpoena issued by an administrative agency “raises only the issues of the authority of the investigating body and whether the inquiry falls within the scope of that authority.” “To sustain the subpoenas, the [agency] need only make a preliminary showing that the information sought is reasonably related to a proper subject of inquiry” (Matter of Nicholson v State Comm. on Judicial Conduct, 50 NY2d 597, 610, 611). That is the most recent statement by this court of the legal test applicable to these proceedings and the subpoenas issued by the State Board for Professional Medical Conduct should be summarily sustained because they satisfy it. By focusing upon language found in some of the older cases (and misconstruing it in my view), the majority has formulated a new rule requiring prior proof of the complainant’s reliability which will frustrate administrative investigations, and it has done so although neither petitioner nor the Appellate Divisions considered that issue. The Legislature, with the support of representative medical societies, has made recent and repeated efforts to improve and strengthen the investigative and disciplinary machinery of the board. The majority’s new rule impedes these efforts and is not needed to correct any identified abuse. The change is not mandated by constitutional principles (see Schachter v Whalen, 581 F2d 35), by statute, or by established case law and I, therefore, dissent.
All the cases make this much clear: an administrative officer or agency, acting pursuant to a legislative grant, may issue a subpoena duces tecum requiring the produc *44 tion of books, records and documents where such material is relevant to an authorized investigation (Matter of Nicholson v State Comm. on Judicial Conduct, 50 NY2d 597, supra; Myerson v Lentini Bros. Moving & Stor. Co., 33 NY2d 250; Carlisle v Bennett, 268 NY 212, 217-218). The subpoena is subject to court attack by the recipient but all the agency need show to sustain it is the administrative “authority and relevancy” and, as some of our cases have added, “some basis for inquisitorial action” (Matter of A’Hearn v Committee on Unlawful Practice of Law of N. Y. County Lawyers’ Assn., 23 NY2d 916, 918, cert den 395 US 959; see, also, Myerson, supra, at p 256; but cf. Matter of Nicholson, supra, at pp 610, 611). The majority has expanded upon the term “some basis for inquisitorial action” and interpreted it to mean that the agency must investigate the complainant before it investigates the complaint. It has even suggested that in some cases a Darden-type hearing (People v Darden, 34 NY2d 177) may be required (at p 42). It holds that subpoenas may not issue unless the board can satisfy the court that the complainant is reliable. Some factual basis is required for the inquiry, certainly, but we have previously held that this requirement relates to the breadth of the inquiry and the extent of the investigation preceding the subpoena (Matter of Myerson, supra, at p 258; Matter of A’Hearn, supra, at pp 918-919). In the case of preliminary investigative inquiries, made before charges have been preferred, we have stated that the required factual basis “is not very exacting” (Virag v Hynes, 54 NY2d 437, 442) and that a “bare showing” of the basis of the inquiry is sufficient (see Matter of A’Hearn, supra, at p 918). The requirement is really little more than a facial showing that the investigating officer is proceeding in good faith (Matter of Nicholson v State Comm. on Judicial Conduct, 50 NY2d 597, 611, supra; Matter of Sussman v New York State Organized Crime Task Force, 39 NY2d 227, 231-232), a requirement so minimal that the courts, upon finding authority in the agency, have presumed good faith (see, e.g., Matter of Nicholson, supra; Matter of Ryan v Lefkowitz, 26 AD2d 604, affd 18 NY2d 977; Matter of Amos Post, Inc. v Attorney-General of State of N. Y., 70 AD2d 750). In some jurisdictions it has even been held that once *45 the administrative authority appears, no factual basis need be shown for believing a violation of law has occurred before the inquiry may be undertaken (see Oklahoma Press Pub. Co. v Walling, 327 US 186, 208-209). Indeed, it is common for regulatory bodies, to say nothing of legislative bodies, to subpoena witnesses, records and documents only for the purpose of preparing legislation (see, generally, 1 Davis, Administrative Law, § 3.04, and cases cited therein).
The application of these rules by contrasting the A’Hearn and Myerson cases illustrates the departure now taken by the majority from what we have required in the past. In A’Hearn, petitioner, an insurance agent under investigation by the Committee on Unlawful Practice of the Law, was issued a subpoena duces tecum requiring him to produce copies of advertisements for pension services placed by him between specified dates, copies of brochures and copies of agreements concerning such pension services (30 AD2d 47, 49, affd 23 NY2d 916, supra). The only “factual basis” offered to support the subpoena was that the Committee on Unlawful Practice had “reason” to believe that petitioner was unlawfully practicing law and wished to investigate the matter. The “reason” apparently was little more than an inference made by the members of the committee after seeing the advertisement (see Matter of A’Hearn v Committee on Unlawful Practice of Law of N. Y. County Lawyers’ Assn., supra, at pp 918-919). Nevertheless, we sustained the subpoena. In Myerson, by contrast, the Commissioner of Consumer Affairs in New York City issued a subpoena duces tecum to a corporation in the business of moving household goods requiring it to produce all of its books and records for the preceding 17 months. The commissioner alleged that she had received “numerous complaints” of underestimates and overcharges which led her to believe that the corporation was engaged in a pattern of deceptive practices. Observing that the commissioner had sought to enforce a subpoena of “the broadest possible dimensions”, we held her factual showing insufficient and granted the motion to quash, noting that more information relating to the number of the complaints, the period covered or the period over which they were received *46 was required in order to support such a broad request. Additionally, we pointed out that the investigation had gone beyond the stages of a preliminary inquiry. The commissioner had already audited Lentini’s books on two occasions and yet she had offered the court no evidence, either on the development of the case or the information gained by the audits, to rebut possible inferences that she was engaged in unjustified harassment. We held the factual basis was insufficient to support the subpoena because of its breadth and the corresponding intrusion into the subject’s private affairs.
Considering the legislative delegation of powers to this board, only a minimal factual basis should be required. The authority of the board is set forth in section 230 óf the Public Health Law which creates a State Board for Professional Medical Conduct composed of physicians, osteopaths and lay members. The physician and osteopathic members, no less than 18, are appointed by the commissioner on the recommendation of various State and local medical societies and the lay members, no less than seven, are appointed by the commissioner with the approval of the Governor. The board, certainly not a body one would expect to be hostile to the interests of physicians, is charged with the duty of investigating professional misconduct. The statute provides that the board “may investigate on its own any suspected professional misconduct” and it “shall investigate each complaint received regardless of the source” (Public Health Law, § 230, subd 10, par [a] [emphasis added]). It “may examine and obtain records of patients in any investigation or proceeding” (Public Health Law, § 230, subd 10, par [l] [emphasis added]). This language evinces as clearly as any could, a legislative intent to empower the board with “broad discretion in determining what records are necessary to facilitate an effective investigation” (see Matter of Murawski, 84 AD2d 496, 498).
The board initiated these two inquiries because it received complaints about petitioners and by law it was required to investigate them “regardless of the source”. Although the majority recognizes this statutory obligation, it states that the complaints must be investigated first by means other than office subpoenas unless the board can *47 demonstrate the bona fides of its investigation. In my judgment, given the authority for the investigation and the relevance of the inquiry, the statutory duty resting on the board is sufficient predicate for showing the “good faith” of the preliminary inquiry after the board has received a complaint. Moreover, the legislative scheme adds additional protection to the subject of the subpoena. It provides that there shall be a Committee on Professional Conduct consisting of four physicians and one lay member (see Public Health Law, § 230, subd 6) and that the committee must approve all subpoenas before they are issued by the executive secretary (Public Health Law, § 230, subd 10, par [k]). In view of this check on the board’s action, one not provided in the legislation creating many administrative agencies, no reason appears why the court should assume the determination of whether complaints are sufficiently reliable to warrant investigation by subpoena.
Moreover, the formulation adopted by the majority lacks precision. It requires the board, once challenged, to demonstrate prima facie a “justifiable basis for a good faith investigation”; its papers must state a “sufficient” or “a minimum threshold foundation” for the investigation. This requires a “threshold showing of authenticity” of the complaint, i.e., “a minimal showing that, in consequence of verification or otherwise”, issuance of a subpoena is necessary to further the investigation. The necessary “threshold showing” includes all or some of the following: (1) identification of the complainant, (2) evidence of his reliability and (3) a disclosure of the basis for his complaint including dates.
I assume all of this means that the board must satisfy itself by an independent investigation that the complainant is reliable and that unless it can satisfy the court of that fact the subpoenas must be quashed. Matter of Myerson (supra) is not cited as the authority for this rule but it appears to be based upon Myerson. The distinction, however, between the cases before us and Myerson could hardly be greater. These are preliminary inquiries based upon legally confidential complaints, resulting in a narrowly drawn subpoena in each case directing the production of documents to enable the board to investigate. They should *48 be sustained because the board has acted well within the rule first stated in Matter of A’Hearn v Committee on Unlawful Practice of Law of N. Y. County Lawyers’ Assn. (supra) and repeatedly approved in our later decisions that the agency need show only authority, relevancy and some basis for the inquiry. The practical effect of this decision is that the board must now undertake a preliminary investigation of the complainant and satisfy the court with its findings, and it must do so without aid of the subpoena power. Just how this could be done in the case of an anonymous complaint is not clear but, more to the point, in most cases investigation of the complainant requires some investigation of his or her complaint and there would be little need for preliminary inquiry thereafter. The matter might as well proceed to formal charges. We rejected a similar argument in Matter of Nicholson v State Comm. on Judicial Conduct, supra, at p 611, and see n).
Finally, these requirements cut against traditional principles, also codified in the statute, which favor quick and confidential investigations of complaints against professionals (see Public Health Law, § 230, subds 9, 10, par [l]; see, also, Matter of John P. v Whalen, 54 NY2d 89; Matter of Marshall v State Bd. for Professional Med. Conduct, 73 AD2d 798, mot for lv to app den 49 NY2d 709) followed by prompt exoneration of the blameless and aggressive action to protect the public from those suspected of being professionally incompetent, mentally ill or dishonest. Undoubtedly, the quickest way to investigate a patient’s complaint (and a way, one would think, not unfairly prejudicial to the physician) is to examine the doctor’s own records. In the case of Dr. Levin, three patients were involved, in the case of Dr. McGrath, only a few more. Surely, established procedure accomplishes the board’s oversight responsibilities more efficiently and with greater protection for the confidentiality of the complainant and the doctor than would necessitate investigative interviews of the doctor’s staff, other doctors, hospital personnel or members of the community to establish “authenticity”. Certainly, it does so with less cost to the taxpayer.
To state the obvious, investigative agencies interfere with individual privacy and freedom and thus there is *49 always the temptation to insulate the citizenry from their “meddling”. But such agencies are created for a reason. In the absence of constitutional infringement or a demonstrated need for the court or Legislature to correct abuses, they should be permitted to serve the public interest as the Legislature intended and without judicial interference. In the case of the Board of Professional Medical Conduct, many of its powers have been granted only in the last few years as both the government and the medical profession recognized the need for stricter oversight of the profession. The present statute was part of a comprehensive bill which addressed the medical malpractice crisis (L 1975, ch 109; see, also, McKinney’s Session Laws of NY, 1975, Legislative Memoranda, pp 1599,1601). It eliminated or restricted certain causes of action against doctors, shortened the Statute of Limitations and created the Board of Professional Medical Conduct to strengthen disciplinary proceedings. When it appeared that the board’s powers were insufficient for the task, the Legislature enacted the Medical Malpractice Act of 1977 which improved the board’s complaint and summary removal procedures. Included in the act, with the support of the Medical and Osteopathic Societies of the State of New York and the New York Hospital Association, were the subpoena powers found in section 230 (subd 10, pars [k], [l]) of the Public Health Law (L 1977, ch 773, and Bill Jackets thereto; and see, generally, Matter of Murawski, 84 AD2d 496, 497-498, supra). In 1980 the statute was amended again, twice, to permit early intervention by the board in aid of physicians suffering from mental illness or drug abuse (L 1980, ch 343) and to eliminate a large backlog of complaints by streamlining and speeding up investigations (L 1980, ch 866; see, also, McKinney’s Session Laws of NY, 1980, Governor’s Memoranda, p 1919). In light of all this activity, the legislative intent and the public need may hardly be doubted. The court should not eviscerate these efforts to improve the board’s ability to fulfill its statutory duties by engrafting onto the statute subpoena requirements which were not intended and which are not required by constitutional precedent or established case law.
*50 I would affirm the order in Matter of Levin and reverse the order in Matter of McGrath.
Judges Wachtler, Fuchsberg and Meyer concur with Judge Jones; Judge Simons dissents and votes to affirm in a separate opinion in which Chief Judge Cooke and Judge Jasen concur.
In Matter of Levin v Murawski: Order reversed, with costs, and the order of Supreme Court, New York County, reinstated.
In Matter of McGrath v State Bd. for Professional Med. Conduct: Order affirmed, with costs.