In the Matter of the TEMPORARY COMMISSION OF INVESTIGATION OF THE STATE OF NEW YORK, Respondent-Appellant, v JOSEPH FRENCH, Appellant-Respondent.

First Department, July 10, 1979

682

APPEARANCES OF COUNSEL

*William D. Friedman* for appellant-respondent.

*Barbara T. Dixon* of counsel *(Risa G. Dickstein,* attorney), for respondent-appellant.

## OPINION OF THE COURT

FEIN, J.

Respondent French appeals from an order which, with certain limitations, directed him to comply with a subpoena issued by petitioner, the Temporary Commission of Investigation of the State of New York (Commission) in conjunction with an investigation pertaining to an arbitration between the County of Nassau and Nassau County Patrolmen's Benevolent Association. The Commission cross-appeals from so much of the order limiting the scope of any inquiry to exclude questions pertaining to respondent's decision-making process and any oral communications had between respondent and his fellow arbitrators in connection with the arbitration decision dated February 24, 1978, awarding a salary increase in excess of 24%.

This proceeding was commenced to seek judicial enforcement of a subpoena issued by the Commission directing respondent French to appear and testify and to produce books, records and papers pertaining to the contract dispute between the County of Nassau and the Nassau County Patrolmen's Benevolent Association. The subpoena sets forth the scope and subject of the investigation as follows: "Matters concerning the faithful execution and effective enforcement of the laws of the State of New York and the conduct of public officers and public employees, with particular reference to the conduct of the Nassau County's Executive Office, the Nassau County Attorney's Office, and the Nassau County Board of Supervisors, including but not limited to, the negotiation, arbitration, confirmation, and review of arbitration awards; the process by which arbitrators were and are designated, approved, regulated and made available for service by Nassau County agencies; and related matters."

Respondent French had been selected as the neutral arbitrator in a three-member panel following an impasse in collective bargaining negotiations between the County of Nassau and its Patrolmen's Benevolent Association. The arbitration resulted in a binding award providing for a salary increase in excess of

24% rendered by French and the PBA appointed arbitrator as constituting a majority. Following an investigation conducted by the Commission, a subpoena was served on respondent on February 27, 1979, directing his appearance at a private hearing to be held on March 8, 1979. Two days prior to the date scheduled for the hearing, the Commission was advised that respondent would not appear. Thereupon, on March 9, 1979, petitioner brought on this proceeding by order to show cause for an order pursuant to CPLR 2308 (subd [b]) to compel respondent's compliance with the subpoena. The affidavit in support of the application by Eric A. Seiff, petitioner's chairman, alleges that the investigation stemmed from "certain allegations made with respect to an arbitration award to the Patrolmen's Benevolent Association of the Police Department of the County of Nassau, Inc. * * * an award which included in excess of a 24% salary increase." The affidavit concludes in general fashion that the testimony of respondent is material and necessary to the investigation, relying upon the broad scope of inquiry as set forth in the subpoena.

Special Term directed respondent to comply with the subpoena, but precluded any inquiry into respondent's decision-making process and any oral communications had between respondent and his fellow arbitrators which preceded and related to the arbitration decision rendered February 24, 1978.

On the appeal, French contends that the Commission acted in excess of its authority in issuing the subpoena, relying upon the restrictions to disclosure contained in section 205 (subd 4, par [b]) of the Civil Service Law. The statute provides as follows: "(b) No member of the board or its appointees pursuant to this subdivision, including without limitation any mediator or fact-finder employed or retained by the board, shall, except as required by this article, be compelled to nor shall he voluntarily disclose to any administrative or judicial tribunal or at the legislative hearing, held pursuant to subparagraph (iii) of paragraph (e) of subdivision three of section two hundred nine, any information relating to the resolution of a particular dispute in the course of collective negotiations acquired in the course of his official activities under this article, nor shall any reports, minutes, written communications, or other documents pertaining to such information and acquired in the course of his official activities under this article be subject to subpoena or voluntarily disclosed; except that where the information so required indicates that the

person appearing or who has appeared before the board has been the victim of, or otherwise involved in, a crime, other than a criminal contempt in a case involving or growing out of a violation of this article, said members of the board and its appointees may be required to testify fully in relation thereto upon any examination, trial, or other proceeding in which the commission of such crime is the subject of inquiry."

The Commission, in its cross appeal, contends that the statutory provision has no application here, since by its terms it only applies to the Public Employment Relations Board, its members, appointees, or any mediator or fact finder employed or retained by the board. It is undisputed that respondent was appointed privately by the County of Nassau and by the PBA as neutral arbitrator in connection with the resolution of their collective bargaining dispute. In the alternative, the Commission asserts that the statute would not apply to preclude the Temporary Commission from conducting a legitimate investigation within its jurisdiction, since the statutory provision extends to "any administrative or judicial tribunal". Although we do not agree with the Commission's restrictive interpretation of the statute, we need not reach this issue since we are in agreement that the statute, extending as it does only to the Public Employment Relations Board, has no application to respondent, who was privately appointed and who was neither a member nor appointee of the board. Even were the statutory provisions applicable here, the present record is insufficient to invoke the exclusion set forth in the statute, which would require members of the board or its appointees to testify "where the information so required indicates that the person appearing or who has appeared for the board has been the victim of, or otherwise involved in, a crime". On this record, there is no showing that a crime has occurred as to invoke the jurisdiction and authority of the Commission to investigate. The conclusory assertion that the Commission's inquiry stemmed from "certain allegations", without disclosure of the nature and source of such allegations is insufficient for this purpose.

Although we conclude that section 205 (subd 4, par [b]) of the Civil Service Law has no application here, this determination is not dispositive of the issues raised on the appeal. Clearly, the enabling legislation which created the Temporary State Commission of Investigation vested it with broad investigatory and subpoena powers (L 1958, ch 989, § 2). However,

there are limits within which the Commission must act. It may not proceed arbitrarily, nor in the absence of a sufficient showing that the issue or subject of investigation is both relevant and material. Over forty years ago the Court of Appeals held in *Carlisle v Bennett* (268 NY 212, 217) that the Attorney-General, in the course of an investigation pursuant to the provisions of the Martin Act, must exercise discretion "within bounds circumscribed by a reasonable relation to the subject-matter under investigation and to the public purpose to be achieved". The court there held (pp 217-218): "The power to require a witness to produce books and papers is necessarily limited to a 'proper case' * * * one where the books and papers called for have some relevancy and materiality to the matter under investigation."

Similarly, in *Matter of A'Hearn v Committee on Unlawful Practice of Law of New York County Lawyers' Assn.* (23 NY2d 916, 918) the Court of Appeals observed in this connection: "It is ancient law that no agency of government may conduct an unlimited and general inquisition into the affairs of persons within its jurisdiction solely on the prospect of possible violations of law being discovered * * * There must be authority, relevancy, and some basis for inquisitorial action (cf. *Matter of La Belle Creole Int. v Attorney-General,* 10 N Y 2d 192, 196 and cases cited)." In *A'Hearn,* the Court of Appeals affirmed this court's affirmance of the order of Special Term which denied petitioner's motion to quash a subpoena duces tecum which had been served upon him by respondent. The subpoena directed petitioner, a nonlawyer, to appear before a subcommittee of respondent to testify in connection with an investigation being conducted by respondent's committee regarding the business conducted by petitioner and others in connection with pension and profit-sharing planning. The court sustained the subpoena issued pursuant to this court's rule providing for the issuance of such a subpoena upon application disclosing that the committee has reason to believe that a person, firm or corporation is unlawfully practicing or assuming to practice law (22 NYCRR 603.13). The court found the disclosure pursuant to the special rule a sufficient basis to initiate the inquiry, observing that if the inquiry became unduly protracted, the witness was not without available remedy to renew its application to quash or to make other appropriate application for relief.

In *Myerson v Lentini Moving & Stor. Co.* (33 NY2d 250)

Lentini appealed from an order compelling its compliance with a subpoena duces tecum which had been issued by the New York City Commissioner of Consumer Affairs. The commissioner had moved to compel compliance with the subpoena pursuant to CPLR 2308 and Lentini had cross-moved to quash the subpoena. The application to compel compliance was supported by the assertion of the commissioner that she had received "numerous complaints" that Lentini was engaged in deceptive trade practices in violation of chapter 64 of the Administrative Code of the City of New York. The application was not supported by any facts as to the number of complaints received, when they were received, or whether the complaints were verified by employees of the department. The court held that an insufficient basis had been shown by the commissioner to direct enforcement of the subpoena, relying upon *Matter of A'Hearn (supra)* for the proposition that there must be some factual basis shown to support the subpoena. The attempt by the commissioner to sustain the issuance of the subpoena based solely upon broad and conclusory assertions that she had received "numerous complaints" was held to be inadequate, the court observing (p 260) that "[t]he slim showing made to support inquisitorial action directed against Lentini, if allowed to justify the broad subpoena issued in this or in future cases, might too easily subject innocent parties to administrative abuse." The court's opinion is most instructive as to the applicable standard to be applied (p 258): "Nothing said thus far is intended to suggest that the commissioner was required to establish a strong and probative basis for investigation, let alone probable cause as that term has been used in the criminal law. All that is required is that the scope of the subpoena and the basis for its issuance be more than isolated or rare complaints by disgruntled customers, lest the powers of investigation, especially in local agencies, become potentially instruments of abuse and harassment. Considering the multiplicity of municipal regulatory agencies, the wide areas they necessarily cover, and the coverage of many if not all enterprises from the very small to the very large, there is a real danger of abuse of power if its exercise is made to depend on shadowy complaints and surmises."

■ Applying these principles to this case, we find the present record insufficient to direct enforcement of the subpoena. The Commission here has made no attempt whatsoever to establish a factual basis to support enforcement of its

subpoena. Nor has it adequately demonstrated that the inquiry sought is relevant or material. The general conclusory assertion that its inquiry stems from "certain allegations" made with respect to the arbitration award which included a salary increase in excess of 24% is insufficient for that purpose. The mere fact that the arbitrators awarded such an increase would not of itself authorize the investigation undertaken by petitioner. Nowhere in the record does petitioner set forth the facts upon which it assumed jurisdiction to conduct such an inquiry and investigation. The pertinent and relevant facts upon which the Commission predicates jurisdiction cannot be shielded from the court, particularly where, as here, judicial relief is sought. The Commission, upon such an application, or in opposition to a motion to quash, is obligated to come forward and disclose to the court at least a minimum factual basis upon which the subpoena was issued so as to enable the court to reach a reasoned decision.

Nor is it at all sufficient for petitioner, as was done here, merely to allege in conclusory fashion that the testimony of respondent, as the neutral arbitrator on the three-person panel which rendered the award, is material and necessary to its investigation. The application of the Commission would require that the court render a determination in a vacuum. Petitioner would have the court direct compliance with its subpoena relying solely upon the naked assertion that the Commission is properly acting within the scope of its powers in conducting an inquiry relating to undescribed and unidentified allegations of misconduct.

A subpoena issued on such a naked basis is not entitled to judicial enforcement (see *Myerson v Lentini Moving & Stor. Co.,* 33 NY2d 250, *supra; Matter of A'Hearn v Committee on Unlawful Practices of Law of New York County Lawyers' Assn.,* 23 NY2d 916, *supra; Carlisle v Bennett,* 268 NY 212, *supra).* In a more recent case the Court of Appeals ruled: "The minimal, equivocal documentary proof in this case with no other proof of any sort to support suspicion of illegality is not sufficient to sustain the subpoena, and it therefore should be quashed." *(Matter of Napatco, Inc. v Lefkowitz,* 43 NY2d 884, 885-886.) By this standard even the limited enforcement directed here was inappropriate. The Commission failed to make even a minimum showing of illegality, misconduct, corruption or criminality as required by those and other cases.

■ In considering the Commission's cross appeal asserting

the right to inquire into respondent's decision-making process, we must be mindful that the Commission's investigation is directed at an arbitrators' determination of a dispute lawfully submitted to binding arbitration. In effect, petitioner, in investigating the arbitration heretofore conducted, seeks to vest in itself greater powers than could be exercised by a court of law when called upon to confirm or vacate an arbitrator's award. Our courts have frequently commented on the desirability of arbitration as a forum for the resolution of disputes, where the parties have consented to submit issues to binding arbitration. In such cases, the law has evolved to the point where it is now crystal clear that courts, with but few exceptions, will not interfere with an arbitration award in the absence of fraud or misconduct (*Board of Educ. v Onontario Corp.,* 35 AD2d 753).

Even if the arbitrators made an error in fact or law, it is not a ground to disturb an award (*Matter of Bay Ridge Med. Group v Health Ins. Plan,* 22 AD2d 807). Unless the award is completely irrational, the arbitrator is free to fashion the applicable rules and determine the facts of a dispute without the award being subject to judicial revision (*Lentine v Fundaro,* 29 NY2d 382).

In the absence of a provision to the contrary contained in the arbitration agreement, arbitrators are not bound by principles of substantive law or rules of evidence. Rather, their duty is to reach an equitable result (*Matter of Sprinzen [Nomberg],* 46 NY2d 623; *Matter of Associated Teachers of Huntington v Board of Educ.,* 33 NY2d 229; *Lentine v Fundaro, supra; Matter of Raisler Corp. [New York City Housing Auth.],* 32 NY2d 274). In *Matter of Sprinzen (Nomberg) (supra),* the Court of Appeals cautioned the courts that in examining an arbitration award, extensive fact finding or legal analysis is to be avoided. "This is so because * * * an arbitrator is free to apply his own sense of law and equity to the facts as he found them to be in resolving a controversy" (p 631).

The power of the court to review the factual or legal basis for an arbitrator's decision is narrowly circumscribed. Although petitioner may not be precluded from lawfully pursuing its investigative powers where properly invoked, the scope of its inquiry is not unlimited. Rather, of necessity, it must reasonably relate to the subject of its investigation. The Court of Appeals has cautioned the courts to exercise due

restraint, according an arbitrator almost unfettered discretion in matters submitted to him by consent of the parties *(Matter of Sprinzen [Nomberg], supra).*

The same policy considerations would require similar restraints upon petitioner. Plainly, the thought processes of the arbitrator are not within the scope of inquiry. Nor may the arbitrator be cross-examined as to the factual or legal basis for his decision. Special Term properly held that even an adequately founded inquiry could not extend to the decision-making process of the arbitrator, nor to communications between the arbitrators which preceded and related to their decision.

Mere suspicion is not a ground for issuance of a subpoena. In the absence of a minimal showing that there is evidence of misconduct, illegality, fraud, corruption, bribery or other criminality no legal foundation for the subpoena is shown to exist.

Accordingly, the judgment denominated as an order, Supreme Court, New York County (FRAIMAN, J.), entered April 6, 1979, directing respondent to appear as a witness at a private hearing to be held before petitioner and to produce all records, books, papers and other documents in accordance with the subpoena dated and served February 27, 1979, but precluding petitioner from any inquiry into respondent's decision-making process and any oral communications had between respondent and his fellow arbitrators which preceded and related to the arbitration decision dated February 24, 1978, should be modified, on the law, to the extent of denying petitioner's application to enforce the subpoena and otherwise affirmed, without costs or disbursements on the appeal. The motion on behalf of the Patrolmen's Benevolent Association, Police Department, County of Nassau, is granted to the extent of accepting the *amicus* brief heretofore filed.

SULLIVAN, BLOOM, MARKEWICH and ROSS, JJ., concur.

Judgment, Supreme Court, New York County, entered on April 6, 1979, modified, on the law, to the extent of denying petitioner's application to enforce the subpoena and otherwise affirmed, without costs and without disbursements. The motion (M-1973) on behalf of the Patrolmen's Benevolent Association, Police Department, County of Nassau, is granted to the extent of accepting the *amicus* brief heretofore filed.