OPINION OF THE COURT

Per Curiam.

Petitioner, New York State Commission on Judicial Conduct, commenced an investigation of respondent, a Family Court Judge, after receiving a complaint from Leon and Maude Mead that he had borrowed $32,000 at 10% interest from them and had failed to repay it in one year as promised. The complainants also alleged that respondent failed to honor his promise to give a mortgage on certain property to secure the loan and that respondent gave them a check for accrued interest which they were unable to cash.
On the basis of this letter and its own investigation, petitioner filed an administrator’s complaint against respondent, pursuant to subdivision 2 of section 44 of the Judiciary Law, alleging that during his tenure as a Judge respondent had formed and actively participated in Fort Ann Properties, a profit-making business; that he had borrowed $11,000 from Marjorie Baker which ultimately resulted in a judgment being entered against him for an unpaid balance of $1,643.07; and that he was named and acted as executor of the estate of Han Spiesen.[1]
*59 Pursuant to its decision to further investigate the Mead’s allegations and those contained in its own complaint, petitioner served respondent with a subpoena duces tecum. Respondent complied with the first two demands, but refused to comply with demands Nos. 3 through 7.* [2] Petitioner then moved to compel respondent to comply with the subpoena duces tecum and respondent cross-moved to quash on the grounds that it was overbroad, indefinite and sought material which was beyond the scope of the investigation. Special Term granted petitioner’s motion to compel and denied respondent’s cross motion to quash. The Appellate Division modified, on the law, by granting respondent’s cross motion to quash demands Nos. 3 through 7 of the subpoena, stating, inter alia, that the scope of investigation must be based on the specific allegations of the complaint; that the information requested in the subpoena appears to be too broad and indefinite and is not limited to the production of information regarding matters specifically alleged in the complaint.
Our State Constitution specifically authorizes the Commission on Judicial Conduct to “receive, initiate, investigate and hear complaints with respect to the conduct, qualifications, fitness to perform or performance of official duties of any judge or justice of the unified court system”. (NY Const, art VI, § 22, subd a.) Recognizing the importance of maintaining the quality of our judiciary, the *60 Legislature has provided the commission with broad investigatory and enforcement powers. (See Judiciary Law, §§ 41, 42, 44; Matter of Nicholson v State Comm. on Judicial Conduct, 50 NY2d 597, 611.) Specifically, the commission is empowered to, inter alia, conduct hearings and investigations, examine witnesses under oath and “require the production of any books, records, documents or other evidence that it may deem relevant or material to an investigation”. (Judiciary Law, § 42, subd 1.)
The Legislature, in enacting these statutes, was also mindful of the principle that “no agency of government may conduct an unlimited and general inquisition into the affairs of persons within its jurisdiction solely on the prospect of possible violations of law being discovered, especially with respect to subpoenas duces tecum”. (Matter of A’Hearn v Committee on Unlawful Practice of Law of N. Y. County Lawyers’ Assn., 23 NY2d 916, 918.) Hence, the materiality and relevancy requirements were included in section 42 of the Judiciary Law to prevent investigatory fishing expeditions. The Legislature further circumscribed the investigatory powers of the commission by requiring, as a prerequisite to initiating an investigation, that it either receive a complaint from a citizen (Judiciary Law, § 44, subd 1) or file a complaint on its own motion (Judiciary Law, § 44, subd 2). Thus, it is the receipt or filing of a complaint which triggers the commission’s authority to commence an investigation into the alleged improprieties.
While the commission’s power to subpoena documents is not absolute, this court has held that it possesses broad power in this respect. “Quite simply, so long as the commission, in good faith, is investigating the conduct of a Judge, the commission is acting within the scope of its authority and a subpoena issued pursuant thereto is not subject to challenge.” “To sustain the subpoenas, the commission need only make a preliminary showing that the information sought is reasonably related to a proper subject of inquiry”. (Matter of Nicholson v State Comm. on Judicial Conduct, 50 NY2d 597, 611,. supra, citing Matter of Sussman v New York State Organized Crime Task Force, 39 NY2d 227, 231; Matter of La Belle Creole Int., S.A. v Attorney-General of State of N. Y., 10 NY2d 192.) The *61 commission need only exercise its subpoena power “within bounds circumscribed by a reasonable relation to the subject-matter under investigation”. (Carlisle v Bennett, 268 NY 212, 217 [emphasis supplied]; see, also, Myerson v Lentini Bros. Moving & Stor. Co., 33 NY2d 250, 256-258; Matter of La Belle Creole Int., S.A. v Attorney-General of State of N. Y., 10 NY2d 192, 196, supra.)
Respondent’s sole contention on this appeal is that the subpoena duces tecum seeks information which is not directly related to the specific allegations contained in the complaints, to wit: the indebtedness or payments to the Meads or to the estate of Maijorie Baker or the business activities in conjunction with Fort Ann Properties. He claims that the commission is not empowered to issue a subpoena that seeks documents of transactions not specifically identified in the complaints and that his cross motion to quash was properly granted. For reasons that follow, and to the extent indicated, we modify the demands of the subpoena duces tecum.
We note at the outset that both the Meads’ letter complaint and the administrator’s complaint represent only the initiation of an investigation of judicial impropriety and not the institution of formal proceedings. (See Judiciary Law, § 44, subds 1,2.) Thus, the commission need not proffer facts in its complaint which would support formal charges. (Matter of Nicholson v State Comm. on Judicial Conduct, 50 NY2d 597, 612, supra.) Nor must it tailor its request for information to relate precisely to specific allegations contained in the complaints. All that need be shown is that the information sought is reasonably related to the subject matter under investigation. (Matter of Nicholson v State Comm. on Judicial Conduct, supra; Myerson v Lentini Bros. Moving & Stor. Co., supra; Carlisle v Bennett, supra.) To hold otherwise would sharply curtail the commission’s investigatory capabilities and render it ineffective as the instrument through which the State seeks to insure the integrity of its judiciary.[3]
*62 One of the matters under investigation by the commission is respondent’s improper participation in personal loans. Thus, demand No. 4 requiring production of various documents relating to loans received by respondent during his tenure as a Judge must be sustained as it directly relates to a specific subject matter of investigation. Similarly, demands Nos. 6 and 7 must be complied with because they relate to another matter currently under investigation — respondent’s business-for-profit activities. Additionally, there is, and can be no serious dispute that respondent’s records relating to any business-for-profit activities (demand No. 5), financial statements submitted by Fort Ann Properties for the purpose of obtaining bank loans (demand No. 6) and other records relating to loan accounts of Fort Ann Properties (demand No. 7) bear a reasonable relationship to the subject matters under investigation.
However, the same cannot be said as to part of demands Nos. 3 and 5. By seeking, in demand No. 3, all writings relating to respondent’s past and present indebtedness, the subpoena duces tecum goes beyond the scope of the commission’s investigation. Indeed, to compel compliance with this demand would require respondent to produce virtually all of his financial records since 1974, including those relating to transactions having no relation to the matters presently under investigation. Similarly, that part of demand No. 5 which requires production of canceled checks, stub books, bank statements and deposit slips for all checking accounts reflecting any and all respondent’s indebtedness is impermissibly overbroad.
We do not, however, agree with respondent that the subpoena must be quashed. Instead, we believe the more appropriate action to take under the particular circumstances of this case is to modify the subpoena to eliminate those portions which request information unrelated to the subject matters under investigation. Therefore, we hold *63 that demand No. 3 can be sustained only insofar as it requires production of materials relating to loans and other debts from clients, litigants and attorneys since January 1,1974 and respondent’s business-for-profit activities during said period. Demand No. 5 is sustained insofar as the documents requested relate to respondent’s loans or their repayment, business-for-profit activities and such other debts as bear a reasonable relation to his loan and business activities.
Accordingly, the order of the Appellate Division should be modified and the respondent directed to comply with the requirements of the subpoena duces tecum as modified in accordance with this opinion, and, except as modified, affirmed.

. The administrator’s complaint, in pertinent part, alleges the following:
“1. It is alleged that on July 28, Í977, [John Doe] formed a corporation, Fort Ann Properties, which leased land to the R. Jennings Manufacturing Company, Inc. at a monthly rental which by September 1980 equaled $800. In addition, [John Doe], as *59 President of the corporation, secured a $75,000 loan from the Glens Falls National Bank using the property and the lease with R. Jennings Manufacturing Co., Inc. as security.
“2. It is further alleged that [John Doe] borrowed $11,000 from Marjorie Baker on December 15,1967, and that in 1976 the estate of Ms. Baker brought suit to recover the unpaid balance. On November 14,1978, a judgment was entered against [John Doe] for the remaining unpaid balance, $1,643.07.”

. The subpoena demanded production of the following documents:
“1. The wills executed by Leon and Maude Mead in 1978.
“2. The minute book for Fort Ann Properties, Inc.
“3. All notations from your diary books, calendars, and other writings from 1974 to the present, reflecting present and past indebtedness or loans.
“4. All promissory notes, memoranda, correspondence, financial statements, receipts, canceled checks, bank statements or writings of any kind relating to loans received by you from any person, corporation or organization since January 1, 1974.
“5. All canceled checks, stub books, bank statements and deposit slips for all your checking accounts since January 1,1974, reflecting loans or their repayment, business-for-profit activity, indebtedness, and checks returned for insufficient funds.
“6. Applications and financial statements submitted by you or Fort Ann Properties, Inc. for the purpose of obtaining bank loans from 1974 to the present.
“7. Bank records, files, correspondence, bank statements and writing of any kind relating to loan accounts in your name or Fort Ann Properties, Inc. from 1974 to the present.”

. Although not alleged or argued by respondent, the dissent implies that the administrator unilaterally determined the scope of the subject investigation. However, there is nothing in the record before us to indicate that the members of the commission did not fully participate in that determination. Nor is there any indication that the full commission did not approve the issuance of the challenged subpoena duces tecum and seek compliance therewith. Indeed, in an affidavit submitted by Stephen F. Downs, chief *62 attorney for the Albany office of the commission, it is specifically stated that the subpoena was “issued by the Commission” in the course of its investigation. Furthermore, it is alleged in the same affidavit that “the Commission commenced a proceeding to enforce its subpoena.” The statement in the dissent that the record “contains no evidence that the members of the commission were aware of the issuance of the subpoena or its scope prior to or at the time of its issuance” is, therefore, incorrect.