OPINION OF THE COURT
Beverly S. Cohen, J.
This is an application by petitioner Matthew T. Crosson (Crosson), as Chief Administrator of the Courts of the Unified *391 Court System (UCS) of the State of New York, pursuant to CPLR 7511, to vacate an arbitration award. Respondents, the New York State Supreme Court Officers Association, ILA, Local 2013, AFL-CIO (the Union), and its president, Glenn Riddell, seek to confirm the award, pursuant to CPLR 7510.
On June 14, 1978, in response to complaints about the uneven distribution of overtime to court officers in New York City in connection with sequestered and deliberating juries, court administrators issued guidelines contained in a memorandum entitled "Citywide Program for Assignment of Senior Court Officers to Deliberating and Sequestered Juries” (the Guidelines) in an attempt at equitably distributing overtime to court officers. Under the Guidelines, court officers who indicated their availability to work overtime receive overtime jury assignments based upon the number of overtime hours worked in that calendar year by the employee. The employee with the least number of overtime hours worked so far that calendar year receives the first available overtime jury assignment. The next assignment goes to the employee with the next least number of overtime hours worked, and so on. The Guidelines also provide that officers assigned to a part at the time the jury commences deliberations "will remain with the jury until conclusion of the case or until such time as discharged or until those assigned request relief,” except that "in no case will an SCO [Senior Court Officer] or Part Captain be permitted to accompany a jury to a hotel overnight more than two consecutive nights”.
It appears that these Guidelines have been applied to distribute overtime equitably among court officers in virtually all but three of over 13,000 jury cases held in New York City since the Guidelines were issued in 1978. This proceeding arises from grievances filed by the Union based on a failure by the UCS to adhere to the Guidelines in two highly publicized, sensational trials involving serious felony charges against Robert Chambers and John Gotti in 1988 and 1990, respectively.
It appears that in the Chambers trial — for which the jury was sequestered from March 17, 1988 through March 25, 1988 —because of special security concerns unique to that trial, overtime relief for the court officer part crew during jury sequestration was drawn from the hallway security detail already working the trial. It appears that on the third night following jury sequestration, a problem arose; and, in order to provide continuity in security and to avoid the possibility of a *392 security breach and mistrial, the sergeant in charge of the part crew remained on duty without overtime relief.
In the Gotti trial, which commenced on January 8, 1990, special security precautions were taken to provide for the security and integrity of the unusually large jury, after information concerning threats of possible jury tampering was furnished from the District Attorney’s office, the FBI and the New York City Police Department’s Intelligence Unit. In order to limit the number of people having contact with the Gotti jury and to provide continuity in security better to detect any irregularities or unusual occurrences, three fixed, oversized part crews of court officers of constant membership that rotated security assignments — including overtime — every two days were utilized.
The Union filed grievances under the parties’ collective bargaining agreement, based upon article 10, which provides, in pertinent part, as follows:
"overtime
"10.4 Authorization for Overtime Work
"(d) The Deputy Chief Administrative Judge (New York City Courts) will take all reasonable steps to provide for an equitable distribution of scheduled overtime opportunities among qualified permanent employees of the appropriate work unit
* * *
"10.11 Exceptions. The restrictions and limitations contained in this Article may be waived by the Deputy Chief Administrator for Management Support Whenever he determines that strict adherence to the rules would be detrimental to the sound and orderly administration of the Unified Court System.” (Emphasis added.)
By mutual agreement, the Chambers and Gotti trial overtime grievances were consolidated for arbitration before arbitrator Margaret S. Liebowitz. Arbitration hearings were held on July 8, 1991; July 9, 1991; July 10, 1991; September 19, 1991; October 10, 1991 and October 17, 1991; and the parties stipulated to the following issue presented to the arbitrator for decision:
"Did the State deviate from the requirements of the 'Citywide Program for the Assignment of Senior Court Officers to Deliberating and Sequestered Juries’ and its related practices in connection with the trials of Robert Chambers and John Gotti in violation of Section 10.4 (d) of the 1985-1988 and 1988-1991 collective bargaining agreements, respectively?
*393 "If so, what shall be the appropriate remedy?”
The UCS argued that its deviation from the Guidelines was justified by the unusual circumstances presented by the Chambers and Gotti trials, and that it was justified under the broad rubric of "Management Rights” as set forth in article 5 of the collective bargaining agreement, which provides as follows:
"management rights
"Except as expressly limited by other provisions of this Agreement, all of the authority, rights and responsibilities possessed by the State are retained by it, including but not limited to, the right to determine the purposes and policies of the State Judiciary; the right to determine the facilities, methods, means and number of personnel required for conduct of State Judiciary programs; the right to administer the Merit System pursuant to law; the right to direct, deploy, determine the size of, and utilize, the work force; the right to transfer employees to other work; the right to contract out for goods or services; the right to establish or to change existing positions in accordance with law; and the right to promote, discipline or discharge employees in accordance with law and the provisions of this Agreement.” (Emphasis added.)
By opinion and award dated May 27, 1992, the arbitrator held that the Guidelines constituted an "agreement” and a "binding past practice,” and that "both Section 10.4 (d) and the Citywide Program expressly limit management’s rights under Article 5”; and, that the employer was not permitted "to deviate from its terms”. Therefore, the arbitrator "[did] not reach the issue of whether the special security precautions at both trials were valid [as UCS argued] or pretextual [as the Union argued]. Whether to accommodate special security needs or any other special circumstances, the employer did not retain the right in the Citywide Program document to order unilateral deviations.” (Arbitrator’s Opinion, at 36.)
As a remedy for the contract violation which she found, the arbitrator directed the State "to adhere to the [Guidelines] * * * and its related practices,” and to "[m]ake whole the Senior Court Officers and Sergeants who were denied the opportunity to work overtime in connection with jury sequestration in the Chambers and Gotti trials.”
An arbitrator’s award will not be vacated for errors of law and fact committed by the arbitrator, or even for misapplication of law (Matter of Sprinzen [Nomberg], 46 NY2d 623, 629). Unless the award is completely irrational, the arbitrator is *394 free to fashion applicable rules to determine the facts of the dispute (Matter of Temporary Commit, of Investigation v French, 68 AD2d 681, 690).
However, the rule that a mistake by an arbitrator in regard to the law or facts is not a ground for vacatur, is inapplicable when the ruling contravenes established public policy (Psychoanalytic Ctr. v Burns, 62 AD2d 963). Where an arbitrator seeks to enforce a contract that is against public policy or otherwise illegal, a court will interfere with the arbitrator’s powers (Matter of Heilman [Casella], 188 AD2d 294, citing Matter of Port Washington Union Free School Dist. v Port Washington Teacher’s Assn., 45 NY2d 411, 417-418).
It is apparent from the stipulated issue that both parties accepted that the. Guidelines satisfied the "equitable distribution” requirement of section 10.4 (d) of their agreement. The issue to be resolved by arbitration was whether the deviations from the Guidelines in these two cases were in violation of "the all reasonable steps” requirement of that section.
Both sides fully argued the "reasonableness” of the State’s actions. The arbitrator concluded, instead, that as the Guidelines were a binding agreement which did not expressly reserve a right to deviate, it was not necessary to determine whether the deviations were reasonable. This conclusion resulted in an award which is not only irrational, but is violative of public policy (Matter of Sprinzen [Nomberg], supra).
Paragraph 10.11 of article 10 of the parties’ collective bargaining agreement, having to do with overtime, specifically reserves to the Deputy Chief Administrator the power to waive the provisions of article 10 when he determines that strict adherence to the rules would be detrimental to the sound and orderly administration of the Unified Court System.
The rules referred to include the requirement in paragraph 10.4 (d) that "all reasonable steps” be taken to provide equitable distribution of overtime opportunities. In furtherance of this rule, the Guidelines were promulgated.
However, paragraph 10.11 remains in force. The arbitrator’s refusal to consider the application of this section lacks reasonable basis.
The court also accepts petitioner’s argument that the arbitration award must be vacated on "public policy grounds” because it "effectively removes from court administrators the power to implement special security measures in exigent *395 circumstances — and thereby deprives the Courts of their power to fulfill their mission”.
Concomitantly, the court rejects respondents’ response characterizing the award, as, "at most, a minor encroachment on the State’s discretion in developing the security needs posed by any particular case”.
There can be no more important public policy than the true administration of justice. A fundamental part of our justice system is trial by jury, which is enshrined in the Constitution (US Const, art I, § 2). An inherent undelegable power of the State is to oversee and ensure the orderly administration of justice (Matter of Meehan v Nassau Community Coll., 152 AD2d 313; see also, Matter of Incorporated Vil. of Malverne [Malverne Police Benevolent Assn.], 72 AD2d 795). The arbitrator’s award impermissibly divested the State and UCS of the authority to exercise essential discretion in special circumstances to decide which of its personnel will be placed in charge of sequestered juries. The importance of the court officers’ role in jury sequestration is highlighted by those cases where a guilty verdict has been set aside based solely on an officer’s communication to the jurors during the critical time of deliberations (see, e.g., People v Bonaparte, 78 NY2d 26, 30). The arbitration award compels assignment to sequestered juries of those officers who, for whatever reasons, volunteer and happen to have the least accrued overtime. The State must have discretion to vary from this method of assignment where circumstances arise involving security concerns.
Respondents’ concern that such discretion would "foster cronyism and divisiveness among SCOA’s membership” does not tip the scales in favor of limiting the State’s powers. Jury deliberations are so intertwined with the overriding public policy considerations of the orderly administration of justice that an award which impinges on the petitioners’ powers and responsibility to protect sequestered juries does violence to the principles upon which such matters rest (Matter of Sprinzen [Nomberg], supra, at 630). Thus, without the necessity for further fact finding or legal analysis, the award must be vacated.
The court does not find it necessary to refer this matter back to the arbitrator to reach the issue of whether the reasons for the deviations in these two cases were valid or pretextual. Instead, the court relies on the undisputed fact that the State deviated from the Guidelines in only three of *396 over 13,000 cases as proof that the State took "all reasonable steps” to equitably distribute overtime. Moreover, despite the arbitrator’s speculation to the contrary, the fact remains that both trials in issue occurred early in the year and any officers who missed out on overtime would have had ample opportunity throughout the year to volunteer for further assignments.
Accordingly, the petition is granted, the award is vacated and the grievances are dismissed.