OPINION OF THE COURT
Edward H. Lehner, J.
The central issue on this motion is whether a writ of mandamus is available to require that respondent New York State Commission on Judicial Conduct (Judicial Commission) *1028 investigate an attorney’s complaint in which he charges that a particular New York City Criminal Court Judge violated the standards of judicial conduct during a court hearing.
On September 14, 1998 petitioner appeared before a Criminal Court Judge in New York County representing a defendant. Four days later petitioner lodged a complaint with the Judicial Commission alleging that the Judge acted improperly by: (1) modifying her ruling based on personal feelings against him; (2) demonstrating intemperate conduct; (3) lacking courtesy; (4) engaging in ex parte communications with petitioner (including giving advice); and (5) wrongfully ordering petitioner removed from the courtroom during an open courtroom proceeding.
On January 4, 1999, an attorney for the Judicial Commission informed petitioner by letter that:
“The State Commission on Judicial Conduct has reviewed your letter of complaint dated September 28, 1998. The Commission has asked me to advise you that it has dismissed the complaint.
“Upon careful consideration, the Commission concluded that there was no indication of judicial misconduct upon which to base an investigation.”
Thereafter, petitioner commenced this CPLR article 78 proceeding seeking a writ of mandamus directing the respondent to conduct an investigation of his complaint.
It must first be noted that: “Our State Constitution specifically authorizes the Commission on Judicial Conduct to ‘receive, initiate, investigate and hear complaints with respect to the conduct, qualifications, fitness to perform or performance of official duties of any judge or justice of the unified court system’. (NY Const, art VI, § 22, subd a.) Recognizing the importance of maintaining the quality of our judiciary, the Legislature has provided the commission with broad investigatory and enforcement powers. (See Judiciary Law, §§ 41, 42, 44; Matter of Nicholson v State Comm, on Judicial Conduct, 50 NY2d 597 * * *)” (Matter of New York State Commn. on Judicial Conduct v Doe, 61 NY2d 56, 59-60 [1984].)
In accordance with this grant of broad authority, section 44 (1) of the Judiciary Law provides, in part, that: “Upon receipt of a complaint (a) the commission shall conduct an investigation of the complaint; or (b) the commission may dismiss the complaint if it determines that the complaint on its face lacks merit.” Hence, based on the express wording of the governing *1029 law, the Judicial Commission’s actions at issue here were within its authority. Accordingly, while the “filing of a complaint * * * triggers the commission’s authority to commence an investigation into the alleged improprieties” (Matter of New York State Commn. on Judicial Conduct v Doe, supra, at 60), it does not require that an investigation take place. This conclusion is supported by the discussion in Matter of Doe v Commission on Judicial Conduct (124 AD2d 1067 [4th Dept 1986]), where the Court outlined the role that an administratively generated complaint plays in a Judicial Commission proceeding, stating (at 1067-1068):
“An Administrator’s Complaint’ is merely a procedural device ‘which triggers the commission’s authority to commence an investigation into the alleged improprieties’ * * * It ‘represent [s] only the initiation of an investigation of judiciary impropriety and not the institution of formal proceedings’ * * *
“The Judiciary Law does not require that any action be taken regarding an Administrator’s complaint. Regulations promulgated by the Commission provide that the Commission ‘may dismiss the [Administrator’s] complaint’ at any time (22 NYCRR 7000.3 [c]); however, neither the statute nor the regulations mandate such action.”
While the complaint at issue was filed by an attorney and hence was not administrative in nature, the language granting the Judicial Commission the wide latitude to decide whether or not to investigate a charge does not distinguish between the two delineated types of complaints. The discretion to decline to investigate applies regardless of the source of the complaint. (See also, Harley v Perkinson, 187 AD2d 765, 766 [3d Dept 1992] [where it was said that “(t)o the extent plaintiff requested that these defendants (Office of Court Administration and the Judicial Commission) perform certain duties, his claims were in the nature of mandamus to compel and where, as here, the action involved the exercise of judgment or discretion, no such relief could be granted”].)
Moreover, the Judicial Commission’s failure to investigate the instant complaint is not appropriately subject to judicial review because the Commission’s function is in many respects similar to that of a public prosecutor. A District Attorney enjoys a large amount of independence of judgment as: “ ‘the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion’ * * * This broad discretion rests largely on the recognition that the decision to prosecute is particularly ill-suited to *1030 judicial review. Such factors as the strength of the case, the prosecution’s general deterrence value, the Government’s enforcement priorities, and the case’s relationship to the Government’s overall enforcement plan are not readily susceptible to the kind of analysis the courts are competent to undertake.” (Wayte v United States, 470 US 598, 607 [1985].)
In terms of challenging a District Attorney’s decision not to prosecute, the court in Matter of Hassan v Magistrates’ Ct. (20 Misc 2d 509 [Sup Ct, Queens County 1959], appeal dismissed 10 AD2d 908 [2d Dept 1960], Iv dismissed 8 NY2d 750 [1960], cert denied 364 US 844 [I960]) very thoroughly examined the authority of a court to order a District Attorney to exercise his discretion to prosecute and concluded that the court is without the power to substitute its judgment for that of the District Attorney. The court ruled that (at 515):
“For a court to issue a mandate such as here requested would have a most chaotic effect upon the proper administration of justice. Anyone with experience as a prosecuting official knows that innumerable complaints of all kinds — justifiable and unjustifiable — are made to a District Attorney almost daily. If the petitioner’s proceeding here were held to be maintainable, it would open the door wide for any complainant, where the prosecuting officer decides that it is improper or improvident to prosecute, to ask the civil courts to review the discretion exercised by such prosecuting officer * * *
“From what has been said, it is self-evident that our public policy prohibits — and rightly so — giving approbation to a petition such as this which seeks to compel a District Attorney, by fiat and mandate of a civil court, to initiate a criminal proceeding.”
“ £[T]he manifold imponderables which enter into the prosecutor’s decision to prosecute or not to prosecute make the choice not readily amenable to judicial supervision’ ” (Kerstanski v Shapiro, 84 Misc 2d 1049, 1051 [Sup Ct, Orange County 1975], quoting Inmates of Attica Correctional Facility v Rockefeller, 477 F2d 375, 380 [2d Cir 1973]; see also, Matter of Johnson v Boldman, 24 Misc 2d 592 [Sup Ct, Tioga County I960]; People v Pettway, 131 Misc 2d 20 [Sup Ct, Kangs County 1985]).
Moreover, recognizing that prosecutors are required to exercise independence of judgment, prosecutorial decisions are shielded with absolute immunity from civil lawsuits, and “ [unquestionably, this immunity applies equally to decisions to prosecute and to decisions not to prosecute” (DeJose v New York State Dept. of State, 1990 WL 59565, 2 [ED NY, Apr. 26, *1031 1990, Raggi, J.], affd 923 F2d 845 [2d Cir 1990], cert denied 500 US 921 [1991]; see also, People v Di Falco, 44 NY2d 482 [1978]; Matter of Whitehurst v Kavanagh, 218 AD2d 366 [3d Dept 1996], Iv dismissed in part and denied in part 88 NY2d 873 [1996]).
While the District Attorney is an elected official whose activity or inactivity is ultimately subject to review by the electorate, in light of the wide latitude statutorily granted to the Judicial Commission in accomplishing its functions and the similarity of the public policy issues involved, the comparison to a District Attorney appropriately serves as a guideline in resolving the issue at hand.
Furthermore, the conclusion that the Judicial Commission’s decision to dismiss the instant complaint without investigation is not vulnerable to a writ of mandamus is also supported by a review of comparable challenges to the decisions of attorney disciplinary committees. In an action where the petitioner sought to compel the First Department Disciplinary Committee to investigate his complaint against his attorney, United States District Court Judge Weinstein concluded that the Committee’s decision not to proceed is exempt from court review because: “[t]he Chief Counsel is in the same position as a public prosecutor required to exercise ‘independence of judgment’ in deciding how to use the limited resources of the office. Imbler v. Pachtman, 424 U.S. 409, 423 (1976). Prosecutors and those holding equivalent office are immune from suits seeking to force official action” (Clouden v Lieberman, 1992 WL 54370, 1, 1992 US Dist LEXIS 2984, *2 [ED NY, Mar. 5, 1992, Weinstein, J. 1992]). Along the same lines, in Matter of Schachter v Departmental Disciplinary Comm. (212 AD2d 378 [1st Dept 1995], appeal dismissed 86 NY2d 836 [1995]), the petitioner brought an article 78 petition challenging the Disciplinary Committee’s decision to dismiss his complaint against two attorneys. The First Department dismissed the petition, holding that (at 378) “[p]etitioner has not established that [the Committee] failed to perform a purely ministerial act required by law.”
In terms of the actual wording of the relevant enabling statute, these holdings are telling because the provision granting the Disciplinary Committee the authority to discipline attorneys does so with broad language (Judiciary Law § 90; 22 NYCRR 603.4) and does not specifically permit the dismissal of a complaint on its face, as is explicitly authorized under the provision governing the Judicial Commission (Judiciary Law *1032 § 44). Similarly, a District Attorney is not expressly granted the authority to decline to prosecute by the applicable enabling statute, but as set forth above, does indeed possess such authority (County Law § 700).
An interesting contrast to the specific deference granted in Judiciary Law § 44 to the Judicial Commission in deciding whether to investigate a complaint is the statute that creates the State Board for Professional Medical Conduct. Public Health Law § 230 (10) (a) (i) provides that the Board for Medical Conduct: “shall investigate each complaint received regardless of the source”. Similarly, Education Law § 6510, which governs proceedings involving allegations of professional misconduct in numerous other professions (including dentists, psychologists, veterinarians, engineers, architects, and public accountants) contains language requiring some level of investigation. Subdivision (1) (b) thereof states: “b. Investigation. The department shall investigate each complaint which alleges conduct constituting professional misconduct. The results of the investigation shall be referred to the professional conduct officer designated by the board of regents * * * If such officer decides that there is not substantial evidence of professional misconduct or that further proceedings are not warranted, no further action shall be taken.”. This mandatory initial investigation is contrary to the explicit discretion granted the Judicial Commission by Judiciary Law § 44 (see, Matter of Frooks v Adams, 214 AD2d 615 [2d Dept 1995]).
Accordingly, a writ of mandamus is unavailable against the respondent Commission to compel its investigation of the subject complaint, and the petition is therefore dismissed.