■ In the Matter of Robert M. Morgenthau, District Attorney, New York County, Respondent. New York State Com-

MISSION ON JUDICIAL CONDUCT, Respondent, and HONORABLE W., Appellant. ROBERT H. TEMBECKJIAN, as Administrator of the New York State Commission on Judicial Conduct, Intervenor-Respondent. [901 NYS2d 6]—

Order Supreme Court, New York County (Nicholas Figueroa, J.), entered on or about October 10, 2008, which, inter alia, granted the petitioner's motion to quash the administrative subpoena signed by Referee James C. Moore, unanimously affirmed, without costs.

This action arises out of an order issued pursuant CPLR 2304 quashing the administrative subpoena issued by the New York State Commission on Judicial Conduct to then New York County District Attorney, Robert M. Morgenthau.

The undisputed facts are that on September 30, 2005, the Commission, on its own motion and own complaint pursuant to Judiciary Law § 44 (2), initiated an investigation of Justice W. and notified him of the allegations by a letter dated December 6, 2005. The complaint alleged certain improprieties with regard to various statements made by Justice W. outside of the courtroom. Between October 20, 2006 and September 19, 2007, the Commission authorized investigations of four additional complaints against Justice W., one of which was the result of a letter submitted by then Chief Assistant District Attorney, James M. Kindler, and three which arose from the already existing investigation. According to intervenor-respondent Robert H. Tembeckjian, Administrator of the Commission and prosecutor of the case, "[a]ll of the new complaints alleged misconduct by [Justice W.] toward the Office of the District Attorney or individual Assistant District Attorneys or in cases being prosecuted by the District Attorney's Office."

The investigations led to three formal written complaints, pursuant to Judiciary Law § 44 (4), which consisted of five charges: (1) that Justice W. made inappropriate personal and political comments from the bench; (2) that Justice W. failed to

report misconduct of another judge; (3) that Justice W. improperly interfered with an application for a judicial appointment; (4) that Justice W. improperly failed to recuse himself from cases where his impartiality may be questioned; and (5) that Justice W. improperly accepted a jury verdict in the prosecutor's absence. In answers to the complaints, Justice W. asserted that Tembeckjian's conduct in proceeding against him was "politically motivated."

The Commission appointed James C. Moore as a Referee to conduct a hearing on the complaints. On or about January 28, 2008, Justice W.'s counsel presented a prospective witness list which included, among others, Tembeckjian himself, Tembeckjian's wife, the District Attorney and Kindler. By letter dated February 12, 2008, Tembeckjian informed the Referee that he objected to these witnesses, and asked the Referee to deny the subpoenas or require Justice W. to make an offer of proof. A hearing was held on February 14, 2008. As to the District Attorney's testimony, Justice W. argued that the District Attorney had personally caused the charges to be brought against him for "purely political reasons" because he had supported former Justice Leslie Crocker Snyder's candidacy for New York County District Attorney. The Referee issued a subpoena for Kindler, and following Kindler's testimony issued a subpoena for the District Attorney.

By letter dated July 2, 2008, Chief Assistant District Attorney Daniel J. Castleman asked the Referee to withdraw the subpoena, pursuant to CPLR 2304. He noted that the District Attorney was not a witness to any of the alleged misconduct, and had no relevant testimony to offer. The Referee declined to withdraw the subpoena.

On or about July 15, 2008, the District Attorney commenced the instant proceeding pursuant to CPLR 2304, applicable to petitions for quashing a subpoena where a referee rather than a judge signs the subpoena. He submitted a verified petition in which he asserted that he did not refer the investigation of Justice W. to the Commission; that he was not the complainant in the case; that he had never appeared before Justice W., and that he had "no first-hand knowledge of any of the matters that appear to be under review." The court signed an order to show cause whereby the District Attorney sought to seal the proceedings and quash the subpoena.

Subsequently, following argument, the court quashed the subpoena. The court found,

"Aside from the referee's conjecture, there is nothing to support the notion that petitioner was a witness to the alleged

misconduct, or that his testimony would assist the Commission in deciding the alleged misconduct or that he possessed knowledge 'relevant to the complaint' under investigation. Judiciary Law § 44 (4). The issuance of subpoenas is further restricted to persons possessing knowledge or evidence 'relevant or material to the subject of the hearing.' Judiciary Law § 43 (2).

"At most, the evidence before the Commission permits the inference that petitioner, through members of his staff, who were actual witnesses, lent his support to the reporting of the misconduct to the Commission. This conclusion is buttressed by respondent's [Justice W.'s] offer during the instant motion of four exhibits . . . , which consist of internal memos to petitioner from prosecutors in his office, detailing instances of alleged misconduct.

"In each of the four exhibits the source and purported witness is a prosecutor in petitioner's office. The content of the allegations set forth in these exhibits establishes that petitioner, although informed, did not witness the alleged misconduct. Consequently, his testimony, if called, would not be relevant or material to the Commission's determinations of misconduct. Moreover, the testimony of each of the complainants is available to the Commission.

"Respondent's counsel suggests that petitioner's testimony would establish his bias and hostile motives. But such impeachment presumes a witness with relevant or material testimony on which he could be cross examined. Here there is none. Therefore, bias, of a non-witness, is immaterial to the adjudication of the alleged misconduct."

On appeal, Justice W. argues that the court erred in quashing the subpoena because the Referee found Kindler's testimony persuasive as to the likelihood that the District Attorney had relevant information. Further, he asserts that the Referee's decision should not be disturbed absent a showing that it was arbitrary and capricious, and that the issue of relevance could be resolved "in a matter of minutes" in testimony under oath.

For the reasons set forth below, we disagree, and affirm Supreme Court's order. As a threshold matter, the cases cited by Justice W. for the proposition that a referee's determination may only be overturned if it is arbitrary and capricious do not stand for that proposition, and do not involve subpoenas, but simply set forth the standard for certain CPLR article 78 proceedings (see e.g., Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County, 34 NY2d 222 [1974]).

The standard for determining the validity of a subpoena is

relevancy and materiality of potential testimony: Judiciary Law § 42 (1) gives the Commission the power to conduct hearings and subpoena witnesses to be examined under oath concerning "evidence that it may deem relevant or material."

Judiciary Law § 43 (2) authorizes a referee to subpoena witnesses for examination under oath, but it too must be regarding evidence that the referee deems "relevant or material to the subject of the hearing." Pursuant to 22 NYCRR 7000.6 (e), the referee is charged with granting "reasonable requests for subpoenas," but 22 NYCRR 7000.6 (i) (2) states that "[a]t the hearing, the testimony of witnesses may be taken . . . relevant to the formal written complaint." Consistent with these provisions, Judiciary Law § 44 (4) provides that the Commission "may take the testimony of witnesses . . . relevant to the complaint."

The Court of Appeals has recognized that the "materiality and relevancy requirements were included in section 42 of the Judiciary Law to prevent investigatory fishing expeditions" (*Matter of New York State Commn. on Jud. Conduct v Doe*, 61 NY2d 56, 60 [1984]). Where a subpoena is challenged in a motion to quash asserting lack of relevancy, it is incumbent upon the issuer to come forward with a factual basis establishing the relevancy to the subject matter of the investigation (*see Matter of New York City Dept. of Investigation v Passannante*, 148 AD2d 101, 104 [1989]). It is simply not enough that the proponent merely hopes or suspects that relevant information will develop (*Matter of Temporary Comm. of Investigation of State of N.Y. v French*, 68 AD2d 681, 691 [1979]; *see also People v Gissendanner*, 48 NY2d 543, 551 [1979] [a subpoena duces tecum should not be issued "to ascertain the existence of evidence"]). The relevancy question turns on whether the expected evidence will help to prove or disprove the subject matter of the investigation or inquiry.

Where the proponent of the subpoena fails to establish a factual basis that shows the relevancy to the subject matter of the investigation, the referee issuing the subpoena has exceeded his or her power under Judiciary Law § 43 (2) and § 44 (4), and the subpoena must be quashed (*see Sonsini v Memorial Hosp. for Cancer & Diseases*, 262 AD2d 185, 187 [1999] [subpoena properly quashed where defendant was "unable to show that the nonparty's testimony was necessary"]).

Here, respondent has failed show that any testimony that the District Attorney could offer would be relevant or material to the subject matter of the charges, that is, Justice W.'s alleged misconduct. On the contrary, the record clearly indicates that

the District Attorney's involvement was limited to permitting the Administrator to conduct interviews with certain members of his staff who might have information pertinent to an investigation of alleged judicial misconduct. The District Attorney asserts, and the Administrator concurs, that the District Attorney was neither the complainant nor the source of the information leading to the investigation.

The subject of the investigation demonstrates, at best, that the District Attorney allowed the Commission to approach possible witnesses on his staff and then kept himself informed as to the developments in the investigation. There is absolutely no indication in the record that the District Attorney witnessed any alleged misconduct nor had any factual information other than that provided by his staff.

Even were we to accept as true Justice W.'s contentions that the District Attorney had a political bias against him, and that he referred the complaints to the Commission himself, neither of these are relevant to the issue of Justice W.'s guilt or innocence of the misconduct charged. Even the amount and type of support the District Attorney may have provided to his staff in the matter has no bearing on the issue of Justice W.'s guilt or innocence. Hence, we find that the Referee applied an entirely erroneous standard when he stated he found a subpoena should issue because Kindler's testimony was "enough to raise some question as to whether the District Attorney was involved in this *in any fashion*" (emphasis added). Subpoenaing the District Attorney with the mere hope of developing relevant testimony once on the stand is precisely the kind of investigatory fishing expedition that the law forbids (*see Matter of New York State Commn. on Jud. Conduct v Doe*, 61 NY2d at 60). Concur—Tom, J.P., Catterson, Freedman and Manzanet-Daniels, JJ.