OPINION OF THE COURT

Per Curiam.

Petitioner, an attorney, became a Judge of the Buffalo City Court December 27, 1977. Before taking office she practiced law with her husband, also an attorney in the Buffalo area. She initiated this proceeding to review a determination of the State Commission on Judicial Conduct censuring her for certain acts of judicial misconduct occurring during 1978 and 1979, acts by which petitioner appeared to demonstrate favoritism to her husband and his clients. The commission by a divided vote sustained 10 charges against her, with one dissent as to charges II and IX and dismissed one charge, charge I, with one dissent. It voted to censure her with one member voting that she be admonished. We conclude that the 11 charges against petitioner were established by the evidence in the record and that based upon these findings the appropriate sanction is removal from office.
The commission proceedings were commenced on February 3, 1981, when a complaint was served on petitioner charging misconduct. The first charge alleged that petitioner signed a warrant for the arrest of a person involved in an automobile accident with her son. The second charge alleged that petitioner signed an order releasing from custody a defendant who was petitioner’s former client and that petitioner’s attorney husband thereafter represented the defendant. The remaining nine charges alleged that petitioner signed releases for defendants in pending criminal cases, both felonies and misdemeanors, when she knew or should have known that her husband represented the defendant in criminal proceedings pending against each of them.
*352 Following a hearing, the referee appointed by the commission filed a report finding that the first charge involving the warrant should be dismissed because there was insufficient evidence to establish that petitioner knew or should have known that her son was the complainant when she signed the warrant in question. The referee found that of the remaining charges in only one, charge V, did the evidence establish that petitioner’s husband represented the defendant at the time that petitioner signed a release order. However, in each of the other nine charges, the referee found that petitioner’s husband became counsel for the defendants after petitioner signed the release orders. In each case she signed the release papers at home when she was not required to do so and when, the referee found, she should have known that representation of the defendant by her husband was likely to follow. The referee therefore concluded that petitioner’s conduct encouraged defendants to retain her husband thereby creating an appearance of impropriety and the impression that petitioner used her judicial office to benefit her husband’s law practice.
The commission affirmed the referee’s findings sustaining charges II through XI of the complaint, with the dissents noted above, and concluded that petitioner had violated sections 33.1, 33.2 and 33.3 (c) (1) (iv)* (presently *353 sections 100.1, 100.2, 100.3 [a] [1] and 100.3 [c] [1] [iv]) of the Rules Governing Judicial Conduct (22 NYCRR) and the similar provisions of Canons 1, 2, 3A (1) and 3C (1) (d) of the Code of Judicial Conduct. The petition followed.
We note at the outset that this court when reviewing a determination of the commission is vested not only with the authority to review the commission’s findings of facts and conclusions of law but also to determine the appropriate sanctions for the misconduct found and to impose a less or more severe sanction (NY Const, art VI, § 22, subd d; Judiciary Law, § 44, subd 9; Matter of Cunningham, 57 NY2d 270, 274; Matter of Steinberg, 51 NY2d 74, 77; Matter of Spector v State Comm. on Judicial Conduct, 47 NY2d 462, 465-466). While we give due deference to the commission’s determination we are obliged to review the correctness of all its findings and conclusions.
The review of this proceeding convinces us that all the charges were supported by the evidence and should be confirmed.
The evidence submitted on charge I established that an information entitled People v “Jane Doe”, charging the defendant with leaving the scene of an accident in violation of subdivision 1 of section 600 of the Vehicle and Traffic Law was presented to petitioner with a proposed arrest warrant annexed for her signature. The complainant was identified as “Frank Sims”, residing at 101 Depew Avenue in Buffalo, New York, and his signature appeared at the bottom of the information. The arrest warrant of the same date charging “Jane Doe” with leaving the scene of an accident was signed by petitioner as a Judge of the City Court of Buffalo. Frank Sims is petitioner’s son and he lived with petitioner and her husband at 101 Depew Avenue at the time. At the hearing the Chief Judge of the City Court demonstrated that when the warrant and information in People v “ Jane Doe” were fastened together as were all informations and warrants, approximately six inches of the information showed below the warrant, and the name *354 of the complaining witness — Frank Sims — was clearly visible.
The evidence established that Frank Sims was involved in an automobile accident in 1979. His father, William Sims, learned about the accident the day it occurred and he instructed his son on “how to go to the warrant clerk and file an information.” He then accompanied him to the warrant clerk’s office at the City Court and introduced him to the warrant clerk. He was with his son for part of the time in the office when the information was filed. Thereafter, Mr. Sims appeared in court with his son on this matter, “not as his attorney,” but as his father. Mr. Sims testified that there was a delay of about one and one-half weeks between the date of the accident and the filing of the information. He testified that the police had investigated the matter and told Frank Sims the name and telephone number of the man who owned the car involved in the accident but the police had been unsuccessful in contacting him, as had Mr. Sims and his son. It was then decided to file an information against “Jane Doe”, as the driver of the vehicle.
Petitioner testified that commonly when a warrant of arrest was presented for her signature, it would be clipped to the information; she presumed it was so attached in this case. Her practice was to look at the warrant and then at the body of the information to see that the charge was “consonant” with that contained in the warrant. She admitted that she signed the warrant for the arrest of “Jane Doe” but she testified that when it was presented to her, she was unaware that her son was the complaining witness, and she did not become aware of it until she was told later.
Petitioner defended her conduct on several grounds. In her view it was the clerk’s responsibility to see that petitioner did not sign the papers “if there was a problem with it.” She also testified that in her opinion it is not wrong for a Judge to sign a warrant on an information signed by the Judge’s son since the complaining witness “is not a party to the action.” Finally, petitioner testified that even if she had seen her son’s signature, the name “Frank Sims” would have meant nothing to her since her son is known at home as “Billy”.
*355 We find the allegations of misconduct contained in charge I sustained by the evidence. Petitioner’s explanation is wholly inadequate to excuse her conduct, particularly when the evidence established that the son lived at home and was counseled in the matter by her husband. Her reliance on the clerk to check the propriety of arrest papers submitted for her signature and her explanation that there was no impropriety in her conduct, in any event, because her son was not a party to the proceeding shows an appalling insensitivity to the responsibilities of her office and a lack of diligence in performing her judicial duties.
With respect to the remaining charges, petitioner challenges the commission’s determination as arbitrary and capricious and lacking the support of substantial evidence. The facts, however, are undisputed. Petitioner and her husband admitted that petitioner’s husband asked petitioner to sign the releases of defendants who subsequently became his clients, that on several occasions the releases were prepared by the husband for petitioner’s signature, that in one case, at least, she may have signed the release in blank. Moreover, it appeared that the release orders were signed at petitioner’s home, even though the evidence before the commission established that a Judge is assigned to Buffalo City Court on the weekends and that the other Judges of that court are not obligated to consider bail applications made to them at home in the evenings or on the weekends. The commission also found that commonly Mr. Sims did whatever petitioner asked in the preparation of a release order, calling the jail to ask for information about the defendant and preparing the release papers; that even when petitioner obtained the information and prepared the release order, her husband “[knew] what was going on.”
The unmistakable impression to be gathered from this conduct was that petitioner and her husband were acting as a team, that because of the Judge’s prior association with some of the defendants and because of her husband’s relationship to her, special favor and consideration could be obtained in the courts through retention of the Judge’s husband.
*356 Notwithstanding these findings petitioner disputes any wrongdoing. Indeed she concedes executing over 100 releases at her home during her tenure in office. Her defense is that such conduct was permissible, that the evidence before the referee established that in only 11 of these cases was her husband retained by the defendant and her husband testified that frequently his fee went unpaid. Based upon this evidence she contends that the commission failed to establish any pattern of misconduct and further that it failed to establish any quid pro quo for her actions. She points out that none of the defendants appeared before her after her husband’s retainer and she insists that in each case the reasons for her husband’s retainer may be explained easily by other circumstances. Petitioner was not charged with misconduct in fact, however, but with conduct that gave the appearance of impropriety. Her claim that her actions were appropriate in these instances displays a serious failure to appreciate the obligations of judicial office and the necessity for Judges to maintain, by their conduct, public confidence in the courts and in judicial office by avoiding situations which cast doubt on their independence and impartiality. The evidence that petitioner failed to meet this standard and violated established rules is overwhelming and the commission’s findings of misconduct in charges II through XI must be accepted.
In view of these findings the commission’s determined sanction of censure must be rejected. Its conclusions are not disregarded lightly and removal is not normally to be imposed for poor judgment, even extremely poor judgment (see Matter of Shilling, 51 NY2d 397, 403). Petitioner’s conduct in these instances, however, transcends poor judgment. Her actions suggested favoritism to her family and her husband’s clients, they were known to litigants, court personnel and jail employees alike and they were not isolated but extended over a period of two years, continuing even after petitioner was on notice that the commission considered her actions in executing releases improper and had instituted proceedings to investigate her. Moreover, at the hearing petitioner demonstrated that she still recognized no possibility that improper appearances existed because of her conduct. Those released by petitioner during *357 the period under investigation included a defendant who was a client of her husband at the time she signed the releases, one who had been a former client of hers, a client and two former clients of her husband, defendants whose release was sought by a former client of her husband and an acquaintance of her husband. Indeed, in one instance, in the same telephone call, a defendant’s family member got a commitment from petitioner to release the defendant and then, after petitioner turned the telephone over to her husband, hired petitioner’s husband to represent the defendant. In another instance a defendant’s release was made upon the husband’s request. Thereafter petitioner’s husband appeared in court with the defendants. These repeated public demonstrations of co-operation between a Judge and her lawyer husband involving criminal proceedings in the court in which she sits as a Judge may not be tolerated or excused. Petitioner’s failure to acknowledge any appearance of wrong and the fact that she granted some applications after a commission complaint had been filed and she knew that she was being investigated for these practices only compound her misconduct (see Matter of Shilling, 51 NY2d 397, 404, supra).
Nor do we accept the contention that petitioner’s conduct is mitigated by her inquiry of the Chief Judge of City Court and his response to her. She wrote him principally concerning circumstances in which she was called at home to execute a release in a case in which there was a personal conflict. He responded that when assigned to court she was obligated to make a bail judgment in such cases without disqualification. He did not authorize or excuse executing releases at home on nights or weekends when petitioner was not assigned.
Petitioner also contends that she was denied her rights to procedural and substantive due process during the commission’s investigation. Contrary to her assertions, the requirement that the commission file an administrator’s complaint prior to the commencement of an investigation was fulfilled (22 NYCRR 7000.2). The filing of the second and third complaints by the commission was a response to the discovery of further possible instances of misconduct uncovered in the course of the investigation of the first *358 complaint and was permissible. The investigation was thus based on adequate factual and legal requirements as required by the Judiciary Law (§ 44, subd 2) and the commission’s rules (see Matter of Nicholson v State Comm. on Judicial Conduct, 72 AD2d 48, mod 50 NY2d 597; see, also, Matter of New York State Comm. on Judicial Conduct v Doe, 61 NY2d 56).
Finally, petitioner contends that the ethical mandate that Judges avoid even an appearance of impropriety is unconstitutionally vague and will result in her punishment for acts which she could not know were proscribed. We have repeatedly upheld the appearance of impropriety rules and stated that Judges may be held to this admittedly high standard of conduct in performing their duties or even when performing nonjudicial duties (see Matter of Aldrich v State Comm. on Judicial Conduct, 58 NY2d 279, 283; Matter of Cunningham, 57 NY2d 270, 274-275, supra; see, also, Matter of Shilling, 51 NY2d 397, supra; Matter of Lonschein, 50 NY2d 569, 572; Matter of Spector v State Comm. on Judicial Conduct, 47 NY2d 462, 469, supra). When a Judge acts in such a way that she appears to have used the prestige and authority of judicial office to enhance personal relationships, or for purely selfish reasons, or to bestow favors, that conduct is to be condemned whether or not the Judge acted deliberately and overtly (Matter of Steinberg, 51 NY2d 74, 81, supra). The record before us establishes that petitioner violated that standard.
For the foregoing reasons we find the charges against petitioner sustained and we direct that she be removed.
Accordingly, the determined sanction of censure should be rejected, the sanction of removal imposed and Barbara M. Sims removed from the office of Judge of the Buffalo City Court.
Chief Judge Cooke and Judges Jasen, Jones, Wachtler, Meyer, Simons and Kaye concur in Per Curiam opinion.
Determined sanction of censure rejected, without costs, sanction of removal imposed and Barbara M. Sims is removed from the office of Judge of the Buffalo City Court.

 “§ 33.1 Upholding the independence of the judiciary. An independent and honorable judiciary is indispensable to justice in our society. Every judge shall participate in establishing, maintaining, and enforcing, and shall himself observe, high standards of conduct so that the integrity and independence of the judiciary may be preserved. The provisions of this Part shall be construed and applied to further that objective.
“§ 33.2 Avoiding impropriety and the appearance of impropriety, (a) A judge shall respect and comply with the law and shall conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.
“(b) No judge shall allow his family, social, or other relationships to influence his judicial conduct or judgment.
“(c) No judge shall lend the prestige of his office to advance the private interests of others; nor shall any judge convey or permit others to convey the impression that they are in a special position to influence him. No judge shall testify voluntarily as a character witness.
“§ 33.3 Impartial and diligent performance of judicial duties. The judicial duties of a judge take precedence over all his other activities. Judicial duties include all the duties of a judicial office prescribed by law. In the performance of these duties, the following standards apply: * * *
“(c) Disqualification. (1) A judge shall disqualify himself in a proceeding in which his impartiality might reasonably be questioned, including but not limited to circumstances where:
* * *
“(iv) he or his spouse, or a person within the sixth degree of relationship to either of them, or the spouse of such a person: * * *
*353 “(b) is acting as a lawyer in the proceeding;
“(c) is known by the judge to have an interest that could be substantially affected by the outcome of the proceeding”.