23893

In the Matter of Jacob J. MARTIN, Respondent.

(434 S.E. (2d) 262)

Supreme Court

Jacob Martin, *pro se.*

*Atty. Gen. T. Travis Medlock* and *Asst. Atty. Gen. James G. Bogle, Jr.,* Columbia, *for complainant.*

Heard May 4, 1993.

Decided July 12, 1993.

*Per Curiam:*

This is a disciplinary proceeding in which Jacob J. Martin (Martin), former municipal judge for the town of Bluffton, is alleged to have willfully violated the Code of Judicial Conduct and the Rule on Judicial Discipline and Standards. A hearing was held before a panel of Hearing Masters. Based on the evidence and testimony presented, the Masters concluded that Martin willfully violated the Code of Judicial Conduct and the

Rule on Judicial Discipline and Standards in the following particulars:

Rule 501, Canon 1 (a judge should observe high standards of conduct)

Rule 501, Canon 2 (a judge should conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary)

Rule 501, Canon 7 (a judge should not publicly endorse a candidate for political office, attend political gatherings, or engage in any other political activity except on behalf of measures to improve the law, the legal system, or the administration of justice)

Rule 502, § 33 (no person shall disclose the existence or contents of papers filed in a Commission investigation unless otherwise directed by the Supreme Court)

The relevant facts are as follows.

### The Disclosure Matter

In October 1991, the Board of Commissioners on Judicial Standards (Commission) received a complaint regarding Martin's handling of a criminal trial. The Commission, by letter, requested that Martin respond to the complaint. The letter admonished that "any release of information concerning the Commission's action in regard to this matter is prohibited by the Rules of the South Carolina Supreme Court."

On December 11, 1991, an article appeared in the *Hilton Head News* reporting that Martin "personally delivered" several documents to the newspaper, including confidential letters concerning the Commission's investigation of Martin. The Commission met on December 13 and found no violation of the Code of Judicial Conduct with regard to Martin's handling of the criminal trial. On December 16, the Commission notified Martin of its finding on the October complaint. At the same time, the Commission requested that Martin explain his releasing confidential correspondence to the *Hilton Head News*. The Commission's letter again admonished Martin that any release of information concerning the Commission's action was prohibited. Martin replied that the materials inadvertently had been included among a bundle of other papers given to the newspaper.

On January 24, 1992, *The Island Packet* reported that the Commission had dismissed the October complaint against Martin. The article quoted portions of the Commission's December 16 letter and stated that "Martin released his copies of month-old commission correspondence to *The Island Packet.*" The article further stated:

> For his part, Martin said Thursday that he released the information to the Packet because he was tired of reading in the newspapers that the commission was investigating him. Martin also said he wasn't giving the information for use as a news story. Rather, he just wanted to show that the investigation was over.

Upon learning of Martin's second disclosure of confidential correspondence, the Commission against requested a response. Martin replied.

> I apologize to the Commission and the Court for my taking that action contrary to the rules of the Court. But, I found it necessary to put to rest the rumors and innuendos associated with the press' persistent reference to my being investigated . . . I felt compelled to attempt to restore the community's confidence in its Court as soon as possible to do so. . . .

### The Political Activity Matter

In late 1991, Wes Jones and Holly Cork were opponents in a political campaign seeking the Republican nomination for State Senate Seat 46. According to witnesses, Martin allowed signs favoring both candidates to be placed on his property. In addition, Martin sponsored and attended a barbecue for Wes Jones on December 19, 1991. Martin's photo also appeared in an endorsement for Holly Cork that was published in the January 24, 1992 edition of the *Beaufort Gazette.* After the Commission inquired as to Martin's endorsement of Holly Cork, Martin responded:

> [I] have not personally seen the ad, but I am aware of its existence and intended that it would generate votes for Ms. Holly Cork. . . . I did this on my own and personally paid for the ad and my other efforts out of my own pocket. . . . I do not expect my personal political activism

to affect the court at all. They are separate entities and I feel obligated to keep them separate.

### The Bluffton Town Council Matter

On December 3, 1991, Martin abruptly interrupted a meeting of the Bluffton town council and levied accusations of criminal conduct against the Bluffton Police Chief. Further, Martin called on council to suspend the Chief "until there is clear evidence that he has not done anything improper or that there is no cause to bring criminal charges against him."

\* \* \* \* \* \*

The Masters recommended no less than a public reprimand. The Commission adopted the Masters' report and recommendation. After the record was certified to this Court, we ordered Martin to show cause why discipline should not be imposed. Martin responded that he would not contest any action taken against him in this matter.

We agree with the Commission's findings. In light of Martin's repetitive and deliberate violation of the Code of Judicial Conduct and the Rule on Judicial Discipline and Standards, and his subsequent removal from the bench, we find the appropriate sanction to be a public reprimand.

Public reprimand.