478 S.E.2d 51

**In the Matter of A.C. McKINNEY, Jr., Respondent.**

**No. 24512.**

Supreme Court of South Carolina.

Heard May 8, 1996.

Decided Nov. 4, 1996.

A.C. McKinney, Jr., Jonesville, for respondent.

Charles Molony Condon, Attorney General, and Nathan Kaminski, Jr., Senior Assistant Attorney General, Columbia, for examiner.

PER CURIAM:

In this judicial discipline action, Respondent, a Jonesville municipal judge [1] in Union County, is charged with misconduct arising out of his issuance and disposition of arrest warrants sworn out by his daughter. The panel of hearing masters recommended Respondent be publicly reprimanded and that steps be taken to immediately remove him from his position. The Board of Commissioners on Judicial Standards unanimously adopted the masters' report and recommendation. We agree with the findings and recommendation of the Board and order that for his misconduct, Respondent is to be removed from office.

## FACTS

We find the record contains clear and convincing evidence of the following facts. *Matter of Peeples,* 297 S.C. 36, 374 S.E.2d 674 (1988) (per curiam) (factual findings of misconduct must be supported by clear and convincing evidence). On August 5, 1994, Respondent issued arrest warrants against Harold Stevens at the request of his daughter, Jean Lawson. The warrants charged Stevens with petit larceny [2] and disorderly conduct,[3] allegedly arising out of an incident that occurred between Lawson and Stevens. Stevens was arrested and put in jail that night. On August 9, 1994, Respondent ordered

---

1. As a municipal judge, Respondent is subject to discipline by this court. *See In the Matter of Martin,* 315 S.C. 370, 434 S.E.2d 262 (1993) (per curiam); *In the Matter of Derrick,* 301 S.C. 367, 392 S.E.2d 180 (1990) (per curiam); § (2)(b), Rule 502, SCACR.

2. S.C.Code Ann. § 16–13–30 (Supp.1995).

3. Jonesville, S.C., Ordinance 15–401 (Nov. 13, 1990).

Stevens's release, although no bail hearing was ever held [4] and Stevens had paid no money toward bail to any person in authority.

Once released, Stevens told police Lawson had demanded $1000 for dismissal of the charges, and that he was only released from jail after his girlfriend paid $500 to Lawson, who then notified Respondent to release him. Another $500 had been promised to Lawson after Stevens's release.

Stevens subsequently paid Respondent $500 in two installments. Respondent gave Stevens a receipt at the time of each payment. Both receipts stated the payment was for bond. Respondent remitted both payments to the city treasurer. At their last meeting Respondent advised Stevens that all charges would be dropped and if necessary he would mislead Stevens's probation officer by telling him Stevens was posting bail for someone else. [5] In an attempt to explain why he could not give Stevens a receipt for the payment made to Lawson, Respondent told Stevens that when Lawson took the $500 payment on August 9 she was attempting to help him by keeping his name "off the damn books when the probation man check it." [6] Subsequent to this, the charges against Stevens were in fact dismissed.

While Respondent claimed he was unaware of Lawson's extortion, there is ample evidence in the record to the contrary. In addition to the evidence described above, a Jonesville City police officer testified he overheard Lawson tell Respondent that if Stevens would pay her $1000 for pain and suffering, she would drop the charges. Respondent replied that was fine with him.

At the hearing Respondent admitted this was not the first time he had signed an arrest warrant for Lawson. He testified his procedure when he signed arrest warrants was to

---

4. Respondent had written on the back of the arrest warrants—before Stevens was arrested—that bond would be $500 per warrant.

5. When Stevens was arrested he was serving probation on a prior conviction for failure to stop for a blue light.

6. Both meetings were recorded by South Carolina Law Enforcement Division through the use of wire surveillance worn by Stevens. Transcripts of these recordings were introduced into the record.

write on them the trial date and the amount of the bond. He rarely held bond hearings. However, he also asserted that in this case, his terming the payments to him as for "bond" on the arrest warrants and the receipts was a mistake because they were really the cost for withdrawing the warrants.[7] While it was his standard procedure to charge a fee for dismissing an arrest warrant, normally he charged between $25 and $75. Respondent stated he charged Stevens more because he had heard from other people that Stevens had been bragging about stealing money from Lawson at other times (unrelated to the current alleged incident).[8] He admitted that neither Jonesville County ordinances nor state law authorized municipal judges to charge costs for a withdrawn warrant.[9]

## DISCUSSION

The underlying theme of the Code of Judicial Conduct is that judges above all else must preserve the integrity and independence of the judiciary. Canons 1, 2A, Rule 501, SCACR. To that end, Canon 2(B), Rule 501, SCACR, mandates that judges not allow family relationships to influence judicial conduct or judgment. Nor should judges lend the prestige of their office to advance the private interests of

---

7. Respondent's records are extremely confusing and inconsistent on this point. His pending criminal docket sheet showed Stevens paid $500 to post bond. However, his criminal docket form showing final case dispositions showed the warrants were withdrawn upon payment of $500 ($250 for each warrant) as "cost." Respondent's monthly report, as well as the disposition form on the two warrants, also refers to these payments as for cost.

8. There is no evidence in the record, however, that Stevens was ever arrested regarding any of these alleged incidents.

9. A summary court representative for South Carolina Court Administration testified about the forms and procedure used by magistrates in municipal courts. He stated the procedure Respondent used in collecting money from Stevens, as shown in his records, was irregular in several ways. First, any money collected for a bond is normally returned to a defendant if an arrest warrant is dismissed. Second, there is no provision to allow for collection of court costs when no conviction results. Third, if the amount paid reflected a fine charged (highly irregular in itself because of the withdrawal of the warrants), Respondent's criminal docket sheet shows no assessments were made on the $500 he collected, as he was required to do.

others, or give the impression that others are in a special position to influence them. In addition, Canon 3(C) requires judges to disqualify themselves in any proceeding in which their impartiality might reasonably be questioned, particularly where they have any personal bias. The panel of hearing masters and the Board found Respondent had violated these standards in addition to his failure to maintain professional competence in judicial administration. Canon 3(B)(1), Rule 501, SCACR. We agree.

Respondent's issuing· arrest warrants where his daughter was the sole affiant was clearly improper; he admitted as much at the hearing.[10] His acceptance of payments to dismiss arrest warrants demonstrate at the very least his incompetence as a judicial officer; more likely it shows Respondent's intentional misuse of his office. Respondent's records are misleading and inconsistent. This, combined with the evidence showing not only Respondent's awareness of Lawson's demand but the use of his judicial office to advance her interests, makes any professed legitimacy of such payments untenable. Particularly appalling is Respondent's professed willingness to mislead a probation officer to advance a family member's interest. Furthermore, from Respondent's own testimony it is clear he has no understanding of certain basic fundamentals of judicial practice and procedure, the purpose of bond and the prohibition on *ex parte* communications being but two of them. This court has disciplined judges for similar conduct. *See, e.g., In the Matter of Bruce,* 300 S.C. 219, 387 S.E.2d 247 (1989) (misconduct found in judge's communicating bribery offer to policeman to drop DUI warrant); *In the Matter of Peeples,* 297 S.C. 36, 374 S.E.2d 674 (1988) (misconduct found in judge's repeated attempts to collect debt for family friend); *In the Matter of Wyatt,* 295 S.C. 34, 367 S.E.2d 22 (1988) (per curiam) (magistrate given public reprimand for,

---

**10.** The fact that Lawson was not technically a party in the action does not excuse Respondent's actions. *See In the Matter of Sims,* 61 N.Y.2d 349, 474 N.Y.S.2d 270, 273, 462 N.E.2d 370, 373 (per curiam), *cert. denied,* 62 N.Y.2d 943, 479 N.Y.S.2d 1028, 468 N.E.2d 56 (1984) (city court judge's contention "that there was no impropriety in her conduct [in signing arrest warrant where her son was the complaining witness] ... because her son was not a party to the proceeding shows an appalling insensitivity to the responsibilities of her office and a lack of diligence in performing her judicial duties").

*inter alia,* securing family members' release from jail without bond hearing or signing of bond forms).

■ Regarding the appropriate sanction, this court has the power to remove judges upon findings of misconduct under our inherent authority to take any action we deem appropriate to protect the state judicial system. *See In the Matter of Ferguson,* 304 S.C. 216, 403 S.E.2d 628 (1991) (per curiam). *See also In the Matter of Maxwell,* 287 S.C. 594, 595, 340 S.E.2d 541, 542 (1986) (per curiam) (judge publicly reprimanded for being convicted of contributing to delinquency of minor and receiving stolen goods; court noted that the misconduct "would have justified his removal from office had not he voluntarily resigned prior to the institution of these proceedings"); *In the Matter of Dearman,* 277 S.C. 394, 287 S.E.2d 921 (1982) (per curiam) (magistrate removed from office based on finding of misconduct).

■ We find Respondent's misconduct is this case warrants removal. While "removal is not normally to be imposed for poor judgment, even extremely poor judgment," *Sims,* 474 N.Y.S.2d at 274, 462 N.E.2d at 374. Respondent's actions went beyond mere unintentional negligence. " 'A specific intent to use the powers of the judicial office to accomplish a purpose which the judge knew or should have known was beyond the legitimate exercise of his authority constitutes bad faith.' " *Inquiry Concerning Garner,* 466 So.2d 884, 885 (Miss.1985) (quoting *In re Nowell,* 293 N.C. 235, 237 S.E.2d 246, 255 (1977)). "We may not tolerate misconduct or misfeasance on any ground, particularly not on grounds of ignorance or incompetence." *Id.* at 887.

Respondent is hereby removed from judicial office.

**REMOVED.**